[No. 21850-6-I.   Division One.   January 30, 1989.]

LINDA K. CURRAN, *Individually and as Guardian, Appellant,* v. THE CITY OF MARYSVILLE, ET AL, *Respondents.*

---

*James J. Rosenberger* and *Paul J. Burns,* for appellant.

*Michael C. Walter* and *Keating, Bucklin & McCormack,* for respondent Marysville.

*Jennifer Schneider,* for respondents Stewart.

WINSOR, J.—Linda Curran appeals from two orders of summary judgment dismissing all claims brought against codefendants the City of Marysville (City) and Harry and Jane Doe Stewart (Stewart). Curran contends that the trial court erred in finding the City immunized from liability under RCW 4.24.210, and that the record presents genuine issues of material fact as to Stewart's alleged negligence. We affirm.

On September 1, 1984, 10–year–old Amber Cole broke her arm while attempting to hurdle a "T–Bar" located at Jennings Memorial Park in Marysville, Washington. Amber was at the park with her grandfather, Harry Stewart, and other family members and friends.

The T–Bar on which Amber injured herself is located in the park's fitness and exercise court. Its intended use is as a device for stretching calf and hamstring muscles. Large signs in the exercise court area explain and illustrate how

to use the T–Bar. Amber used the T–Bar as illustrated, but quickly became bored with this activity. She then tried to hurdle the T–Bar, fell, and broke her arm.

Neither Stewart nor the other adult member of the group was with Amber when she attempted to hurdle the T–Bar. Stewart had allowed Amber and an 8–year–old friend to go to the exercise court while he and the rest of the party visited a garden approximately 25 yards away. Although Stewart could not see Amber from the garden, she was within his hearing distance.

After Amber's injury, her mother, Curran, brought suit against the City individually and as Amber's guardian ad litem. Curran alleged that the exercise court was "a known, dangerous, artificial, latent condition" for which the City had negligently failed to post conspicuous warning signs, and that it was an attractive nuisance. Curran later amended her complaint to add Stewart as a codefendant. She alleged that Stewart's negligent supervision proximately caused Amber's injury.

In answer to Curran's complaint, the City asserted Washington's recreational use statute, RCW 4.24.200–.210, as an affirmative defense. The City alleged that the statute immunized it from all liability. Curran moved for an order holding the statute inapplicable to "an accident involving the use of jogger's warm–up equipment maintained in a city park." The trial court denied Curran's motion, and ruled RCW 4.24.210 applicable to the facts of this case. The City and Stewart then moved for orders of summary judgment dismissing all claims against them. The trial court found no material issues of fact and granted each party's motion. Curran sought direct review of both summary judgment orders in the Supreme Court. That court declined review and transferred the matter to this court for determination.

## Statutory Immunity

We first consider whether the trial court erred in holding that RCW 4.24.210 applies to the facts of this case. RCW 4.24.210 limits the liability that can be imposed on public

or private landowners who allow members of the public to use their property for outdoor recreation purposes.[1]

As first enacted in 1967, RCW 4.24.210 provided that the outdoor recreation for which liability was limited included "hunting, fishing, camping, picnicking, hiking, pleasure driving, nature study, winter sports, [and] viewing or enjoying historical, archaeological, scenic, or scientific sites" conducted on agricultural or forest land. Laws of 1967, ch. 216, § 2. In this form, the statute would not have applied to the instant case.

Subsequent amendments, however, significantly broadened the statute's original scope, both as to affected lands, and as to activities encompassed within the term "outdoor recreation." In 1972, the statute was amended to expressly include both public and private landowners. Laws of 1972, 1st Ex. Sess., ch. 153, § 17. In 1979, it was amended to include "any lands whether rural or urban". Laws of 1979, ch. 53, § 1. A series of amendments added several illustrative outdoor recreation activities to the statute, including:

---

[1]RCW 4.24.210 currently provides:

"Any public or private landowners or others in lawful possession and control of any lands whether rural or urban, or water areas or channels and lands adjacent to such areas or channels, who allow members of the public to use them for the purposes of outdoor recreation, which term includes, but is not limited to, the cutting, gathering, and removing of firewood by private persons for their personal use without purchasing the firewood from the landowner, hunting, fishing, camping, picnicking, swimming, hiking, bicycling, the riding of horses or other animals, clam digging, pleasure driving of off–road vehicles, snowmobiles, and other vehicles, boating, nature study, winter or water sports, viewing or enjoying historical, archaeological, scenic, or scientific sites, without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users: *Provided,* That any public or private landowner, or others in lawful possession and control of the land, may charge an administrative fee of up to ten dollars for the cutting, gathering, and removing of firewood from the land: *Provided further,* That nothing in this section shall prevent the liability of such a landowner or others in lawful possession and control for injuries sustained to users by reason of a known dangerous artificial latent condition for which warning signs have not been conspicuously posted: *Provided further,* That nothing in RCW 4.24.200 and 4.24.210 limits or expands in any way the doctrine of attractive nuisance: *And provided further,* That the usage by members of the public is permissive and does not support any claim of adverse possession."

swimming, boating, water sports, driving all–terrain vehicles and snowmobiles, bicycling, riding horses or other animals, clam digging, and firewood cutting for personal use. Laws of 1980, ch. 111, § 1; Laws of 1979, ch. 53, § 1; Laws of 1972, 1st Ex. Sess., ch. 153, § 17; Laws of 1969, 1st Ex. Sess., ch. 24, § 2. The 1979 amendments also broadened the scope of "outdoor recreation" by specifying that the term includes, "*but is not limited to,*" the listed activities. (Italics ours.) Laws of 1979, ch. 53, § 1.

Curran contends that the legislative history of RCW 4.24.210 indicates the statute was not intended to apply to accidents occurring in municipal park playground and exercise areas.[2] She also argues that Amber's playground activity was not "outdoor recreation" within the meaning of RCW 4.24.210. We disagree.

■ Curran's legislative history argument overlooks the broadening effect of subsequent amendments to RCW 4.24-.210. The statute now expressly includes any publicly owned lands, whether rural or urban. This language necessarily includes a municipal park and its play and exercise areas, and has been so interpreted by the Washington courts. *See Partridge v. Seattle,* 49 Wn. App. 211, 741 P.2d 1039 (1987) (RCW 4.24.210 applied to a diving accident which occurred in water just outside the public swimming area at a Seattle city park); *Preston v. Pierce Cy.,* 48 Wn. App. 887, 741 P.2d 71 (1987) (RCW 4.24.210 applied to an

---

[2]Additionally, Curran argues that RCW 4.24.200 precludes a holding that RCW 4.24.210 applies to municipal parks and playgrounds. RCW 4.24.200 provides that the purpose of the recreational use statutes is to encourage landowners to make property available to the public for recreational purposes. Curran's reliance on RCW 4.24.200 is misplaced. The statute's stated purpose applies to municipalities and other public landowners, as well as to private landowners.

It is interesting to note that in 1967, the same year that this statute was first enacted, the Legislature passed RCW 4.96.010, eliminating sovereign immunity for municipalities. Laws of 1967, ch. 164, § 1. That withdrawal of immunity as to municipally owned recreational lands has been gradually eroded by subsequent amendments to RCW 4.24.210.

accident which occurred on a merry–go–round located in a Pierce County park); *Riksem v. Seattle,* 47 Wn. App. 506, 736 P.2d 275 (RCW 4.24.210 applied to a bicyclist–jogger accident on a recreational trail located in part within Seattle city limits), *review denied,* 108 Wn.2d 1026 (1987).

Curran's contention that Amber's activity is not encompassed by the term "outdoor recreation", as used in RCW 4.24.210, requires somewhat more analysis. No Washington court has expressly held that RCW 4.24.210 limits liability for injuries resulting from children's play on playground or exercise apparatus, although that result is implied by opinions construing the statute. *See Preston v. Pierce Cy., supra* (in the context of a playground accident, the court discussed the applicability of exceptions to RCW 4.24.210 without expressly addressing whether the statute applied to the activity). We conclude that the statute must so apply, given the ever broadening effect of the Legislature's amendments to the statutory language.[3]

RCW 4.24.210 describes "outdoor recreation" as including, but not limited to, cutting and gathering firewood, hunting, fishing, camping, picnicking, swimming, hiking, bicycling, riding horses or other animals, clam digging, pleasure driving off–road vehicles, snowmobiling, boating, nature study, winter or water sports, and viewing or enjoying historical or scientific sites. In 1977, before the Legislature added bicycling, horseback riding, clam digging, and firewood gathering to the list of included activities, one commentator made the following analysis:

> Unlike some state statutes which limit applicability of recreational use legislation to certain specific activities, the Washington act applies broadly to all outdoor recreation. . . .

---

[3]Both Curran and the City cite cases from other jurisdictions as support for their interpretations of RCW 4.24.210. None of the cases cited interpret recreational use statutes sufficiently similar to ours for the cases to be persuasive authority.

With respect to R.C.W. § 4.24.210, all the individual recreational activities listed characteristically occur outdoors. Moreover, from the express use of the phrase "outdoor recreation," it can be inferred that the act applies specifically to injuries which occur in large, open spaces. It seems unlikely that the statute would cover such mishaps as a fall on a walkway while entering a dance or injuries suffered while playing or watching an indoor sport. . . .

How physical the outdoor activity must be before it comes within the scope of the statute is another matter. Among the recreational activities listed . . . are "nature study," and "viewing or enjoying historical . . . sites." Arguably, even walking across the ground is included.

(Footnotes omitted.) Barrett, *Good Sports and Bad Lands: The Application of Washington's Recreational Use Statute Limiting Landowner Liability,* 53 Wash. L. Rev. 1, 20–21 (1977).

As Barrett concludes, the single unifying element in the listed activities is that each occurs outdoors. Some of the activities occur in the outdoors in its natural state (hunting, fishing, clam digging), while others more commonly occur on property improved so as to facilitate recreation (swimming, bicycle riding). Some require the use of mechanical equipment or devices (bicycling, snowmobiling, boating), while others require only the actor (swimming, hiking). It has already been held that the statute encompasses injuries incurred while using specially constructed recreational equipment. *McCarver v. Manson Park & Rec. Dist.,* 92 Wn.2d 370, 597 P.2d 1362 (1979) (statute immunizes district from liability for fatal injury incurred when 14–year–old fell from diving tower onto dock).

We conclude that "outdoor recreation" as now used in RCW 4.24.210 encompasses all recreational activities which commonly are conducted outdoors. Recreational activities are those which "provide diversions or amusements," *Webster's Third New International Dictionary* 1899 (1971), and thus include the play which led to Amber's injury.

We hold that RCW 4.24.210 applies to accidents on municipal park playground and exercise apparatus, and affirm the order of summary judgment dismissing Curran's claims against the City.[4]

### NEGLIGENT SUPERVISION CLAIM

Curran also contends that the evidence before the trial court raises material questions of fact concerning whether Stewart negligently supervised Amber. Curran argues that the evidence demonstrates that Stewart knew Amber needed adult supervision, and raises a material question as to whether his failure to closely supervise Amber was therefore a breach of his duty of care.

■ Although the issue has not been specifically addressed in Washington, it is well settled elsewhere that one who voluntarily assumes responsibility for the care of a child has a duty to exercise reasonable care to protect that child. 65 C.J.S. *Negligence* § 63(60) (1966); 57 Am. Jur. 2d *Negligence* § 377 (1971). The measure of the duty owed is determined by what a reasonable person would do in the same circumstances and therefore varies in relation to the age, maturity, and intelligence of the child being cared for. 57 Am. Jur. 2d, *supra* §§ 88–89, 377.

The law does not require that parents or custodians do the impossible for children, "[t]hey are not required to watch them every minute." 57 Am. Jur. 2d, *supra* § 377, at 785. One who cares for a child is not an insurer of the child's safety. Thus, one with responsibility for a child's care "has no duty to foresee and guard against every possible hazard", 65 C.J.S., *supra* § 63(60), at 782, and will not be found to have negligently supervised a child unless he or she "had some knowledge that the child was frequenting a

---

[4]Curran also assigned error to the trial court's conclusion that the T–Bar was not a known dangerous artificial latent condition, or an attractive nuisance. However, Curran made no argument in support of that assignment of error in either her opening or reply brief. Curran therefore abandoned this assignment of error and we do not review her contentions on this issue. *See, e.g., Smith v. King,* 106 Wn.2d 443, 451–52, 722 P.2d 796 (1986) (assignments of error unsupported by argument or authority are deemed waived).

dangerous area, and failed to warn the child or to take other adequate precautions." 57 Am. Jur. 2d, *supra* § 377, at 784–85; *cf. Cox v. Hugo,* 52 Wn.2d 815, 821, 329 P.2d 467 (1958) (parent's claim is not barred by contributory negligence unless the parent knew the child was in a dangerous area and failed to issue warnings or otherwise take adequate precautions); *Gabel v. Koba,* 1 Wn. App. 684, 688, 463 P.2d 237 (1969) (it is neither customary nor practicable for parents to follow children around with a keeper, or chain them to a bedpost); *see Laite v. Baxter,* 126 Ga. App. 743, 191 S.E.2d 531 (1972) (no negligence as a matter of law in permitting 12–year–old to enter rapids without close adult supervision); *Whitney v. Southern Farm Bur. Cas. Ins. Co.,* 225 So. 2d 30 (La. Ct. App. 1969) (no negligence as a matter of law for leaving 12–year–old unattended by an adult on a swimming outing).

Here, Stewart left Amber, a 10–year–old, unattended but within hearing distance for only a short time. There is no evidence from which we can infer that Stewart knew, or should have known, that the exercise court was somehow dangerous. Accordingly, we hold that Stewart did not breach the ordinary duty of care owed to a child by briefly allowing Amber to play without adult supervision.

Curran argues that summary judgment was improper because the evidence raises a question as to Amber's need for exceptionally rigorous adult supervision, and that Stewart was negligent in not providing that heightened level of care. The evidence upon which Curran relies for establishing Amber's need for exceptional care is her affidavit, in which she states:

> Since Amber's birth, my father has had personal knowledge of her physical behavior, her level of maturity, her impulsiveness, her judgment, and on numerous occasions her poor common sense.
>
> . . .
>
> Prior to the subject accident in which Amber was injured, my father had knowledge of Amber's climbing, jumping, running, [bike riding], experience and activities;

many of which demonstrated the need for adult supervision of her behavior.

■ Affidavits submitted in support of, or in response to, a motion for summary judgment must set forth such facts as would be admissible in evidence. CR 56(e). An affidavit does not raise a genuine issue for trial unless it sets forth facts evidentiary in nature, *i.e.,* information as to "what took place, an act, an incident, a reality as distinguished from supposition or opinion." *Grimwood v. University of Puget Sound, Inc.,* 110 Wn.2d 355, 359, 753 P.2d 517 (1988). Ultimate facts, conclusions of fact, or conclusory statements of fact are insufficient to raise a question of fact. *Grimwood,* at 359–60.

Curran's affidavit sets forth only her conclusory statements that Stewart knew of Amber's need for adult supervision, and that he had observed her playing. Even interpreted in Curran's favor, we find this insufficient to raise a question of fact as to whether Amber, a child nearly 11 years old, and by all accounts a child of at least average intelligence, required exceptionally rigorous adult supervision.

The summary judgment orders of dismissal in favor of the City of Marysville and Stewart are affirmed.

SWANSON, J., and SCHUMACHER, J. Pro Tem., concur.

Review denied at 112 Wn.2d 1020 (1989).