[No. 11068-1-III.   Division Three.   April 18, 1991.]

EVERETT JOSEPH COX, *as Guardian ad Litem, Appellant,* v. JULIA K. MALCOLM, ET AL, *Defendants,* DON R. LOBE, *Respondent.*

*Virginia DeCosta, Stephen Bulzomi,* and *Messina Duffy,* for appellant.

*William W. Spencer, Ronald L. Unger,* and *Murray, Dunham & Murray,* for respondent.

GREEN, C.J.—Everett Joseph Cox, as guardian ad litem for Jason Cox, a minor, commenced this action against Don Lobe to recover damages for personal injuries suffered when the vehicle in which Jason was a passenger left the road and plunged into the Lind–Coulee Reservoir. He alleged Mr. Lobe, the boy's stepgrandfather, was negligent in allowing Jason to be taken as a passenger in the vehicle after its driver had consumed alcohol at Mr. Lobe's home. Mr. Lobe moved for and was granted summary judgment. The sole issue on appeal is the propriety of the summary judgment.

On April 20, 1986, Mr. Cox placed his 5–year–old son, Jason, in the care of Julia Malcolm. She was Mr. Cox's 20–year–old, live–in girl friend. Ms. Malcolm telephoned Mr. Lobe, who was Mr. Cox's stepfather, and asked if she and the boy could come to his house so she could sunbathe. Mr.

Lobe agreed. Upon their arrival at 2:30 p.m., Ms. Malcolm requested an alcoholic beverage.[1] Mr. Lobe mixed her a rum and Coke which she took with her to the patio. Mr. Lobe and Jason worked in the yard; they planted shrubs and flowers, changed the oil in the lawn mower, and mowed the lawn. Approximately 1 hour later, Ms. Malcolm asked for another drink. Mr. Lobe served her a second rum and Coke and she returned to the patio. Mr. Lobe and Jason returned to the garden. When she finished her second drink, Ms. Malcolm entered the house and poured herself another drink. She finished her third drink in approximately 15 minutes and then told Mr. Lobe that she and Jason had to leave to attend a picnic in Othello.

About 4:40 p.m., Ms. Malcolm and Jason left the Lobe residence. Approximately 2½ miles from the Lobe residence, she blacked out at the wheel. Her car left the road, rolled down an embankment and plunged into the Lind–Coulee Reservoir. Jason was under water for about 30 minutes before rescuers took Ms. Malcolm and Jason to Samaritan Hospital in Moses Lake. Approximately 1 hour after the accident, two state troopers observed her at the hospital. Both smelled a strong odor of intoxicants and concluded she was intoxicated. At 6:40 p.m., a blood sample was taken reflecting an alcohol content of .20 percent. As a result of the tragic accident, Jason suffered severe, permanent and disabling injuries.

This action was commenced on June 13, 1986, against Ms. Malcolm and Mr. Lobe to recover damages for the boy's injuries.[2] Mr. Lobe's motion for summary judgment dismissal was granted. This appeal follows.

---

[1] Mr. Lobe was not aware that Ms. Malcolm had already had a beer that morning.

[2] An amended complaint was filed on July 29, 1986, to include a claim against Grant County. In November 1986, Jason's guardian reached a settlement with Ms. Malcolm and she was dismissed. A stipulated order of dismissal of Grant County was entered on December 8, 1989. Ms. Malcolm pleaded guilty to one count of vehicular assault.

Juanita Martini, Jason's substituted guardian ad litem,[3] contends the court erred in granting the summary judgment. Relying on *Curran v. Marysville,* 53 Wn. App. 358, 766 P.2d 1141, *review denied,* 112 Wn.2d 1020 (1989), she argues an issue of material fact exists as to whether Mr. Lobe was negligent in turning Jason over to Ms. Malcolm after Ms. Malcolm's consumption of alcohol. Mrs. Martini asserts that having assumed responsibility for Jason while Ms. Malcolm sunbathed, Mr. Lobe was required to act with reasonable care.

■ Summary judgment will be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); CR 56(c). A material fact is one upon which the outcome of the litigation depends. *Estate of Celiz v. PUD 1,* 30 Wn. App. 682, 684, 638 P.2d 588 (1981). The initial burden is on the moving party to prove there is no genuine issue of material fact. *Rathvon v. Columbia Pac. Airlines,* 30 Wn. App. 193, 201, 633 P.2d 122 (1981), *review denied,* 96 Wn.2d 1025 (1982). The burden then shifts to the nonmoving party to set forth specific facts showing there is a genuine issue requiring a trial. *Rathvon,* at 201. The court considers all facts and reasonable inferences therefrom in a light most favorable to the nonmoving party.

■ The essential elements of actionable negligence are: (1) the existence of a duty owed to the complaining party, (2) a breach thereof, (3) a resulting injury, and (4) a proximate cause between the claimed breach and resulting injury. *Hansen v. Washington Natural Gas Co.,* 95 Wn.2d 773, 776, 632 P.2d 504 (1981). The threshold determination of whether a duty exists is a question of law, not of fact. *Bernethy v. Walt Failor's, Inc.,* 97 Wn.2d 929, 933, 653 P.2d 280 (1982); *Mejia v. Erwin,* 45 Wn. App. 700, 705, 726

---

[3]Mrs. Martini, Jason's grandmother, was substituted as his guardian ad litem after Mr. Cox abandoned his son and moved to Missouri. At the time of the accident, Mrs. Martini was married to Mr. Lobe.

P.2d 1032 (1986); *Peterson v. Pacific First Fed. Sav. &
Loan Ass'n,* 23 Wn. App. 688, 692, 598 P.2d 407 (1979). If it
can be said as a matter of law that reasonable persons could
reach but one conclusion, after considering all of the evi-
dence most favorably to the nonmoving party, summary
judgment may be granted. *Wilson v. Steinbach, supra* at
437; *Mejia v. Erwin, supra* at 705.

Mrs. Martini places great reliance on *Curran v. Marys-
ville, supra,* to establish Mr. Lobe's duty. There a 10-year-
old child was injured while at a park with her grandfather.[4]
The court held that one who voluntarily assumes responsi-
bility for the care of a child has a duty to exercise reason-
able care to protect that child. *Curran* concluded that the
duty to supervise a child was well established elsewhere
and cited 57 Am. Jur. 2d *Negligence* § 377 (1971) and 65
C.J.S. *Negligence* § 63(60) (1966) as supporting authority.
However, the cases relied on in those treatises are not only
scant in terms of number, but are very weak as persuasive
direct authority.

Mrs. Martini has not cited any decisions which expressly
recognize a third party's duty to take affirmative action to
protect a child from the negligent care of a parent or one in
a position of loco parentis. Imposing such a duty would
require third persons to control the acts of parents or those
in a position of loco parentis. The creation of such a duty
goes well beyond that referred to in *Curran.*

The decisions relied on by Mrs. Martini from other juris-
dictions address liability placed on third persons who
directly supervised children in their custody and control.
*Gulledge v. Gulledge,* 51 Ill. App. 3d 972, 367 N.E.2d 429
(1977) (9-year-old in care of grandparents injured by lawn
mower); *Freeman v. Wilcox,* 303 So. 2d 840 (La. Ct. App.
1974) (child riding in rear of pickup truck injured); *Convery*

---

[4]The court found the grandfather was not liable for negligent supervision
since there was no evidence from which the court could infer he knew or should
have known an exercise court was dangerous. Accordingly, the court determined
the grandfather did not breach the ordinary duty of care owed to a child by
briefly allowing her to play without adult supervision.

*v. Maczka,* 163 N.J. Super. 411, 394 A.2d 1250 (1978) (5–year–old injured while playing unsupervised); *Barrera v. General Elec. Co.,* 84 Misc. 2d 901, 378 N.Y.S.2d 239 (1975) (infant in grandfather's care injured after coming in contact with rotary ironer); *Broome v. Horton,* 83 Misc. 2d 1002, 372 N.Y.S.2d 909 (1975) (infant under grandparents' supervision bitten by dog); *Crowley v. Spivey,* 285 S.C. 397, 329 S.E.2d 774 (Ct. App. 1985) (mother shoots her children at grandparents' home).

■ By definition, the duty to supervise is limited to supervision of the activity over which the third person assumed responsibility. Here, at most, Mr. Lobe assumed responsibility for supervising Jason while working in the yard. The decision to take Jason and leave Mr. Lobe's residence rested with Ms. Malcolm. He did not assume the responsibility for making decisions for Jason, particularly in derogation of the rights of the parent or one acting in loco parentis.

■ There is no duty to prevent a third party from causing physical injury to another. *See Petersen v. State,* 100 Wn.2d 421, 426, 671 P.2d 230 (1983). The general rule and exceptions to this rule are considered in Restatement (Second) of Torts § 315 (1965).[5]

Restatement (Second) of Torts § 315 states:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

■ The initial inquiry in any section 315 analysis is to determine the nature of the relationship between (a) the victim and the defendant, and (b) the defendant and the

---

[5]Washington courts acknowledged section 315 exceptions in *Petersen,* and held a psychiatrist has a duty to take reasonable precautions to protect others who might foreseeably be endangered by a patient's mental problems. In such situations, the psychiatrist has a special relationship with the patient upon which a duty arises in the psychiatrist to control a patient's conduct.

party inflicting the injury on the victim.[6] At the time of the accident, Mr. Lobe was married to Mrs. Martini, the mother of the victim's father. Thus, Mr. Lobe was the stepgrandfather of Jason. At common law, the relationship of stepparent and stepchild imposed no duties and conferred no rights. *In re Estate of Smith,* 49 Wn.2d 229, 231, 299 P.2d 550, 63 A.L.R.2d 299 (1956). Clearly, the relationship between stepgrandparent and stepgrandchild is further removed from the imposition of duties and conferring of rights and is insufficient in and of itself to constitute the special relationship contemplated in section 315 of the Restatement. As a matter of law, there likewise was no "special" relationship between Ms. Malcolm and Mr. Lobe.

Mrs. Martini contends a factual issue exists as to whether Mr. Lobe "shared a joint custody" for Jason's care. This argument, in effect, adopts the duty standard set forth in section 320 of Restatement (Second) of Torts:

One who . . . voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self–protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor

(a) knows or has reason to know that he has the ability to control the conduct of the third persons, and

(b) knows or should know of the necessity and opportunity for exercising such control.

The record here does not support a conclusion that Mr. Lobe voluntarily took custody of Jason and then relinquished custody of him to Ms. Malcolm. Establishing a legal duty under the scenario of facts presented here would

---

[6]The circumstances under which a special relation will arise between "the actor" and "the other" (*i.e.,* victim) which require the actor to control the conduct of another are described in sections 314A and 320. *See* section 315, comment *c.* Section 320 applies to jailers, prison wardens, teachers, asylum superintendents, etc. *See* section 320, comment *a.* Section 314A applies to common carriers, innkeepers, and certain possessors of land.

expand tort liability to a degree heretofore unrecognized in Washington.

 Finally, Mrs. Martini contends that Mr. Lobe negligently supervised Jason because he allowed him to leave with a person to whom he had provided alcohol. We find this argument unpersuasive. At common law, it is not tortious to provide intoxicating liquor to an able–bodied person. *E.g., Halvorson v. Birchfield Boiler, Inc.*, 76 Wn.2d 759, 762, 458 P.2d 897 (1969). Washington has followed this rule, but recognizes exceptions if intoxicating liquor is provided to a person "who is obviously intoxicated, in a state of helplessness or in a special relationship to the furnisher of the intoxicants." *Christen v. Lee*, 113 Wn.2d 479, 494, 780 P.2d 1307 (1989). These exceptions apply, however, only to "commercial hosts" and "quasi–commercial hosts". Quasi–commercial hosts are those who do not sell alcohol but have a business interest in furnishing it to their guests. *Christen*, at 494 (citing *Burkhart v. Harrod*, 110 Wn.2d 381, 383, 755 P.2d 759 (1988)).

Washington has thus far "declined to extend liability to purely social hosts" either under any of the exceptions noted above or "for furnishing intoxicating liquor to a minor." *Christen*, at 494–95 (citing both *Burkhart* and *Wilson v. Steinbach, supra* at 441). Since Mr. Lobe was a "purely social host", he cannot be held liable to Jason simply for providing liquor to Ms. Malcolm.

As tragic as Jason's injuries were, we find Mr. Lobe owed no duty under the law as it currently exists in this state to protect the boy from the harm suffered.

Affirmed.

MUNSON and THOMPSON, JJ., concur.

Reconsideration denied May 15, 1991.