# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JOHN ARCHER, as legal guardian of JOHN B. ARCHER, a minor child,<br><br>             Appellant,<br><br>             v.<br><br>MARYSVILLE SCHOOL DISTRICT, a local government entity,<br><br>             Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 73449-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br>FILED: July 25, 2016 |

APPELWICK, J. — Archer was injured while playing basketball on a Marysville School District playground on a Saturday. Archer sued. The trial court dismissed Archer's case on summary judgment based on Washington's recreational use statute, RCW 4.24.210. The statute provides public and private landowners who allow members of the public to use their lands for purposes of outdoor recreation immunity from liability for unintentional injuries to such users. Id. Archer argues that even though the statute's language explicitly applies to public landowners, the legislature did not intend for recreational use immunity to apply to public landowners such as school districts. He asserts that basketball is not an outdoor recreation activity to which RCW 4.24.210 applies. He claims that the District has not provided sufficient evidence that it intended to open the playground to the public for outdoor recreation purposes. We affirm.

## FACTS

Sunnyside Elementary School, a school within the Marysville School District (District), has an outdoor playground. The playground has basketball hoops and courts. The playground is fenced on all sides, but is not locked. Outside of regular

school hours, including on the weekends, the playground and the basketball facilities are open to the public for use at no charge.

On Saturday, January 25, 2014, 13 year old John Archer was playing basketball on the outdoor court on Sunnyside Elementary School's playground. Archer was not a student at the school at the time. While Archer was playing, a pole supporting the backboard and hoop collapsed and caused injuries to Archer's face. Archer filed a lawsuit against the District, alleging negligence.

The District filed a motion for summary judgment, arguing that it was entitled to immunity under the recreational use immunity statute, RCW 4.24.210. That statute provides landowners who allow members of the public to use their lands for purposes of outdoor recreation immunity from liability for unintentional injuries to such users. RCW 4.24.210(1). The trial court initially denied the District's motion for summary judgment. It reasoned that there was an issue of material fact as to whether immunity actually applies, because the District had a playground equipment policy that indicated it would provide safe playground equipment. The District filed a motion for reconsideration, arguing that the playground equipment policy did not create a duty and that it was entitled to recreational use immunity. The trial court granted the District's motion for reconsideration, granted the District's underlying motion for summary judgment, and dismissed Archer's claims with prejudice. Archer appeals.

2

BACKGROUND

Washington's recreational use statute, RCW 4.24.210, was enacted to

encourage owners or others in lawful possession and control of land and water areas or channels to make them available to the public for recreational purposes by limiting their liability toward persons entering thereon and toward persons who may be injured or otherwise damaged by the acts or omissions of persons entering thereon.

RCW 4.24.200. The current version of RCW 4.24.210 states in relevant part:

(1) . . . [A]ny public or private landowners, hydroelectric project owners, or others in lawful possession and control of any lands whether designated resource, rural, or urban, or water areas or channels and lands adjacent to such areas or channels, who allow members of the public to use them for the purposes of outdoor recreation, which term includes, but is not limited to, the cutting, gathering, and removing of firewood by private persons for their personal use without purchasing the firewood from the landowner, hunting, fishing, camping, picnicking, swimming, hiking, bicycling, skateboarding or other nonmotorized wheel-based activities, aviation activities including, but not limited to, the operation of airplanes, ultra-light airplanes, hang gliders, parachutes, and paragliders, rock climbing, the riding of horses or other animals, clam digging, pleasure driving of off-road vehicles, snowmobiles, and other vehicles, boating, kayaking, canoeing, rafting, nature study, winter or water sports, viewing or enjoying historical, archaeological, scenic, or scientific sites, without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users.

On appeal, Archer's primary argument is that the legislative history for these and other statutes dictates that the legislature did not intend for recreational use immunity to apply to public school districts. Consequently, we begin by briefly considering this relevant legislative history.

In 1917, a bill was enacted that barred actions against school districts for noncontractual acts or omissions relating to any park, playground, field house, athletic apparatus or appliance or manual training equipment. Wagenblast v.

3

Odessa Sch. Dist. No. 105-157-166J, 110 Wn.2d 845, 858, 758 P.2d 968 (1988); LAWS OF 1917, ch. 92, § 1 (former RCW 28.58.030 (1917)). Years later, in 1967, the legislature repealed former RCW 28.58.030. Paulson v. Pierce County, 99 Wn.2d 645, 651, 664 P.2d 1202 (1983). That same year, Washington enacted RCW 4.24.210. McCarver v. Manson Park and Irrigation District, 92 Wn.2d 370, 374, 597 P.2d 1362 (1979); LAWS OF 1967, ch. 216, § 2. At the time, RCW 4.24.210 did not specify whether it applied to both private and public landowners. See LAWS OF 1967, ch. 216, § 2.

RCW 4.24.210 was amended in 1972. LAWS OF 1972, 1st ex. sess., ch. 153, § 17. The words "public or private" were inserted before the word "landowners" in the first sentence of the statute and the driving of "snowmobiles" and "all-terrain vehicles" (ATV) were added to the list of outdoor recreational activities. Id.; McCarver, 92 Wn.2d at 375. The amendments to RCW 4.24.210 were included in a bill which substantially revised the administration of ATV law and was designed to increase the availability of ATV trails and areas. Id. There is otherwise limited legislative history available concerning the impetus for the addition of the words "public or private" to the statute. Id.

The Washington Supreme Court considered the import of the addition of those words and interpreted RCW 4.24.210 in McCarver. In McCarver, a girl died in 1973 after falling or being pushed from a diving tower and hitting her head on a dock while swimming in Manson Park. Id. at 371. Manson Park was a public landowner—an unincorporated quasi-municipal corporation—which allowed the public to use the area for recreation without charging a direct fee. Id. at 371, 372.

4

The deceased's mother and father initiated an action against the park. Id. at 371-72. The park moved for summary judgment based on recreational use immunity. Id. at 372. The trial court granted summary judgment in part, reasoning that the recreational use immunity statutes applied. Id. On appeal, the McCarver court noted that the sole issue was whether the park is included in the class of protected landowners under the statute. Id. at 374.

Notwithstanding the fact that the language of the statute expressly included public landowners and that the parties stipulated that the park allowed the public to use the swimming area, the plaintiffs argued that the park was not within the purview of the statute. Id. at 373-74. They made this argument based on the statutory history, statutory purpose, and public policy. Id. The plaintiffs asserted that the limitations on the liability of public landowners under RCW 4.24.210 should be restricted to ATV and snowmobiling activities, because the purpose of the 1972 amendments was directed toward those activities. Id. at 376.

The McCarver court reviewed the statutory history and statutory purpose. Id. at 375-77. It ultimately concluded that the language of the statute was clear and unambiguous and that RCW 4.24.210 drew no distinction between public and private landowners. Id. at 376. It held that clearly, the statute, as amended, includes public landowners and occupiers within the recreational use immunity from liability. Id. The court specifically stated, "If the legislature intended the liability limitations to apply to public owners only as to incidents arising from the use of ATV and snowmobiles, it should have used more precise language to establish such an intent." Id.

As to the statutory purpose, the plaintiffs argued that limitations on liability are not necessary to encourage public landowners, such as the park, to devote public land to recreational use. Id. at 377. But, the McCarver court concluded that the statutory purpose as outlined in RCW 4.24.200 was not restricted to private landowners. Id. ("In 1972, the Washington legislature made a legislative determination that inclusion of public, as well as private, landowners effectuated the statutory purpose of encouraging the availability of recreational land and water areas.").

After McCarver, in 1979, the legislature amended RCW 4.24.210 by substituting "any lands whether rural or urban" for "agricultural and forest" lands. LAWS of 1979, ch. 53. § 1. It also made changes to the list of outdoor recreation activities. Id. Most notably, it added the phrase "but is not limited to" in front of the list, making it non-exhaustive.[1] Id. Since the 1979 amendments, no Washington court has rejected the application of recreational use immunity based on the fact that the defendant was a public landowner.

---

[1] After 1979, RCW 4.24.210 was amended again in 1980, 1991, 1992, 1997, 2003, 2006, 2011, and 2012. See LAWS of 1980, ch. 111, § 1; LAWS of 1991, ch. 50, § 1; LAWS of 1991, ch. 69, § 1; LAWS of 1992, ch. 52, § 1; LAWS of 1997, ch. 26, § 1; LAWS of 2003, ch. 16, § 2; LAWS of 2003, ch. 39, § 2; LAWS of 2006, ch. 212, § 6; LAWS of 2011, ch. 53, § 1; LAWS of 2011, ch. 171, § 2; LAWS of 2011, ch. 320, § 11; LAWS of 2012, ch. 15, § 1. The post-1979 amendments added various outdoor recreation activities to its coverage (skateboarding or other nonmotorized wheel-based activities, rock climbing, fixed anchors, aviation activities including but not limited to, the operation of airplanes, ultra-light airplanes, hanggliders, parachutes, and paragliders) and made it so that certain administrative charges do not constitute "fees" that would preclude immunity. Compare LAWS of 1979, ch. 53, § 1 with RCW 4.24.210.

6

DISCUSSION

Archer argues that the trial court erred when it granted the District's motion for summary judgment on reconsideration. This court reviews summary judgment orders de novo. Hadley v. Maxwell, 144 Wn.2d 306, 310-11, 27 P.3d 600 (2001). Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Peterson v. Groves, 111 Wn. App. 306, 310, 44 P.3d 894 (2002). When considering the evidence, the court draws reasonable inferences in the light most favorable to the nonmoving party. Schaaf v. Highfield, 127 Wn.2d 17, 21, 896 P.2d 665 (1995).

## I.   Recreational Use Immunity – Public Landowners

Archer begins by arguing that the legislature did not intend for recreational use immunity to provide immunity to public school districts. He claims that it would be absurd and unjust to conclude that the 1967 legislature would repeal school districts' tort immunity for defective playground athletic equipment only to reinstate it via recreational use immunity without being explicit.

Recognizing that McCarver is still good law and binding authority, Archer sets out to attack the McCarver court's analysis. Like the plaintiffs in McCarver, Archer argues that the legislature intended only to extend the immunity to tort claims arising from recreational vehicle use. He asserts the McCarver court did not address relevant legislative history of the 1972 amendments[2] nor the legislative

---

[2] The 1972 amendments adding "public or private" to RCW 4.24.210 were not originally included in the house bill, but were later added by the Senate Committee on Natural Resources and Ecology. McCarver, 92 Wn.2d at 375-76.

history of the 1979 amendments, which confirmed that the addition of "any lands whether rural or urban" applied only to private landowners.[3] Archer asserts:

> McCarver's statement that "[c]learly, the statute, as amended, includes public landowners and occupiers within the recreational use immunity from liability,92 Wn.2d at 376, should be clarified because it has fueled the legend that the Washington Legislature in 1972 and 1979 expanded recreational use immunity to cover all recreation activities commonly conducted outdoors on all public lands.

Archer also criticizes McCarver's statement that in 1972, the Washington legislature made a legislative determination that inclusion of public as well as private landowners effectuated the statutory purpose of encouraging the availability of recreational land and water areas. He asserts that this is contradicted by the legislative synopsis.

But, whether the McCarver court considered or adequately considered this legislative history is not dispositive. First, as noted by the McCarver court, the plain language of RCW 4.24.210(1) is clear:

> [A]ny public or private landowners . . . who allow members of the public to use [their land] for the purposes of outdoor

---

Archer cites to the legislative synopsis of the bill and notes that the addition of "public or private" landowners was not considered to be a substantive change by the Senate. Archer's characterization is accurate. The explanation of the Senate amendment stated that there were only four substantive changes and it did not mention that addition. The McCarver court noted that the 1972 amendment was not originally in the house bill and that it came out of the Senate. 92 Wn.2d at 376. But, the court did not reference the legislative synopsis.

[3] Archer cites to the bill report for the assertion that the expansion of recreational use immunity from agricultural and forest lands to "any lands whether rural or urban" in 1979 applied only to private landowners. The bill report stated that the issue was that private landowners should have clear protection from liability when they allow their land to be used for recreational purposes. The McCarver court did not discuss the 1979 amendments—or its legislative history— because the plaintiff's injuries in that case occurred in 1973. 92 Wn.2d at 371.

recreation . . . without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users.

92 Wn.2d at 373, 376 (emphasis omitted) (quoting RCW 4.24.210). This court does not subject an unambiguous statute to statutory construction. Cerrillo v. Esparza, 158 Wn.2d 194, 201, 142 P.3d 155 (2006). Thus, when a statute is not ambiguous, only a plain language analysis of the statute is appropriate. Id. at 201. Each word of a statute is to be accorded meaning because drafters of legislation are presumed to have used no superfluous words, and courts may not delete language from an unambiguous statute. State v. Roggenkamp, 153 Wn.2d 614, 624, 106 P.3d 196 (2005). We conclude that the plain language, "any public or private landowners" clearly extends recreational use immunity to public landowners such as the District.

Additionally, the legislature has amended RCW 4.24.210 on numerous occasions since the McCarver decision in 1979. See LAWS of 1980, ch. 111, § 1; LAWS of 1991, ch. 50, § 1; LAWS of 1991, ch. 69, § 1; LAWS of 1992, ch. 52, § 1; LAWS of 1997, ch. 26, § 1; LAWS of 2003, ch. 16, § 2; LAWS of 2003, ch. 39, § 2; LAWS of 2006, ch. 212, § 6; LAWS of 2011, ch. 53, § 1; LAWS of 2011, ch. 171, § 2; LAWS of 2011, ch. 320, § 11; LAWS of 2012, ch. 15, § 1. Despite the decision in McCarver, the legislature has not amended the language "public or private landowners." Id. Courts presume the legislature is familiar with judicial interpretations of statutes. State v. Ervin, 169 Wn.2d 815, 825, 239 P.3d 354 (2010). As the legislature has not changed this language, Washington courts have consistently granted recreational use immunity to public landowners since McCarver. See, e.g., Curran v. City of Marysville, 53 Wn. App. 358, 359-60, 367,

766 P.2d 1141 (1989) (affirming dismissal of claim for injuries while playing on public park playground's exercise equipment); Van Dinter v. City of Kennewick, 121 Wn.2d 38, 40, 846 P.2d 522 (1993) (affirming dismissal of claim for injuries on public park playground equipment); Swinehart v. City of Spokane, 145 Wn. App. 836, 839, 187 P.3d 345 (2008) (affirming dismissal of claim for injuries on slide in public park playground). The Curran court specifically addressed the issue of whether recreational use immunity applies to a public landowner.[4] 53 Wn. App. at 362. It held that it does. Archer responds only that none of these cases examined the legislative history of the 1972 and 1979 amendments to RCW 4.24.210. We decline Archer's invitation to disregard what became a well-settled principle of law when the Washington State Supreme Court decided McCarver.

II.   Proof of Intent

Next, Archer argues that the District failed to prove that it intended to open its playground to the public for outdoor recreation purposes. Archer notes that for recreational use immunity to apply, land must be opened for the purpose of recreation and that it would not be held open to the public in the absence of that use. Citing to Camicia v. Howard S. Wright Construction Company, 179 Wn.2d 684, 697, 317 P.3d 987 (2014), Archer asserts that the proper focus of this inquiry is on the landowner's intent. The District maintains that the playground was open to the public for recreational use at no charge. But, Archer claims that because

---

[4] Van Dinter and Swinehart—and many other cases cited by the District involving public landowners—considered only whether an exception to recreational use immunity applied, not specifically whether public landowners are afforded immunity. Van Dinter, 121 Wn.2d at 43; Swinehart, 145 Wn. App. at 845.

recreational use immunity is an affirmative defense, the burden is on the District to provide evidence of this intent.

But, Camicia stands for neither the proposition that the land must be exclusively used for recreational purposes nor the proposition that the District must provide affirmative evidence that it intended to open the playground for recreational use purposes. In Camicia, the plaintiff sustained injuries when she was thrown from her bike on the Interstate I-90 bicycle trail located in the city of Mercer Island. 179 Wn.2d at 687. The city moved for summary judgment, claiming recreational use immunity. Id. The Camicia court held that summary judgment was improper. Id. It concluded that there were disputed issues of fact as to whether the trail served a recreational purpose as opposed to a transportation purpose. Id. It stated that where land is open to the public for some other purpose—for example as a part of a public transportation corridor—the inducement of recreational use immunity is unnecessary. Id. at 697. This is because it would make little sense to provide immunity on the basis of recreational use when the land would be held open to the public even in the absence of that use. Id. The court noted that viewed in the light most favorable to the plaintiff, the deed conveying portions of the I-90 trail to the city suggested that the city lacks the ability to close the trail to transportation. Id. at 700. And, therefore, a factfinder could reasonably infer that the I-90 trail would be open to public bicycling for transportation purposes regardless of any recreational use or function, and that the public invitation was therefore not for the purposes of outdoor recreation. Id. at 700-01.

Camicia does not require the landowner to intend to open the land for the purpose of recreation to the exclusion of all other purposes. Rather, it stands for the proposition that if the land is required to be used for a public nonrecreational use purpose, it is a question of fact whether the public invitation can be said to be for purposes of outdoor recreation. Here, unlike in Camicia, there is no evidence in the record that the playground is required to be or would be used for any other purpose during nonschool hours except on special occasions such as during a carnival or an event requiring overflow parking. Because a landowner may use the land for different purposes at different times, it is necessary to focus on the nature of the landowner's use at the time of the accident being litigated. Home v. N. Kitsap Sch. Dist., 92 Wn. App. 709, 714, 965 P.2d 1112 (1998).

Here, at the time Archer was injured, school was not in session nor was the school using the playground for school-related purposes.[5] And, unlike a bike trail which may be open for transportation in addition to recreation purposes, it is difficult to contemplate what the District's alternative intent would be in keeping the playground open to the public during these other times. See Widman v. Johnson, 81 Wn. App. 110, 114, 912 P.2d 1095 (1996) (reasoning that when every reasonable person would believe the landowner opened the property for recreational use the fact that it could serve other purposes lacks legal significance). Moreover, unlike the deed requirement in Camicia, there is no requirement that the District keep the playground open at all.

---

[5] That the playground is occasionally used for special events and bus transportation purposes does not change the fact that the playground was open for Archer's recreational use at the time he was injured.

12

Still, Archer argues that the District's written playground equipment policy[6] provides evidence that the District did not prove the playground was open for the purpose of outdoor recreation. And, he notes that the playground policy actually evidences the District's intent to provide a duty of reasonable care—not to claim immunity—when it opened the playground. On reconsideration, the trial court rejected this argument, reasoning that the District's safety policy does not establish the District's intended use for the playground, but rather establishes the District's maintenance procedures for its outdoor recreational facilities. We agree with the trial court. That the District aspires to provide safe equipment—even during nonschool hours—does not mean that it intended to keep the playground open for another purpose besides recreation. Nor does it signal it was waiving the protection of the statute for outdoor recreational activities.

Archer has not provided any authority to support his assertion that the District is required to present evidence that unequivocally proves its intent to open the playground for outdoor recreational purposes. We conclude that there is no genuine issue of material fact that the playground was open for purposes of outdoor recreation at the time of Archer's injury.

---

[6] The policy states that playground equipment is an essential part of a complete school facility. And, it states that all playground equipment should be assessed in terms of suitability and durability and for possible health or safety hazards. It mandates that consideration should be given to potential hazards when the playground is unsupervised during nonschool hours.

III.   Basketball as an Outdoor Recreation Activity

Next, Archer claims that basketball is not an outdoor recreation activity to which RCW 4.24.210 applies.  RCW 4.24.210(1) provides a list of "outdoor recreation" purposes, but notes that the term is not exhaustive.

Archer cites to Matthews v. Elk Pioneer Days, 64 Wn. App. 433, 438, 824 P.2d 541 (1992), to support his argument.  In Matthews, the court held that watching a performance conducted on an outdoor stage at a community festival was not an activity covered under RCW 4.24.210.  64 Wn. App. at 438.  The Matthews court identified the issue as whether festival activities are similar to the specific examples of outdoor recreation set forth in RCW 4.24.210.  Id.  It noted that the common feature of the statutory examples is that they are types of activities that require the outdoors and are generally physical in nature, requiring the active involvement of the person using the land.  Id.  It reasoned that festival activities do not require either active involvement or the outdoors.  Id.

Archer argues that competitive team sports like basketball are more like watching a performance because they are usually played indoors, and are not similar to the outdoor-only activities listed in RCW 4.24.210.  But, the Matthews court did not hold that the activity must be an outdoor-only activity.  And, in fact, in Curran, the court concluded that "outdoor recreation" encompasses all recreational activities[7] which are commonly conducted outdoors.  53 Wn. App. at 364.  Indeed, many of the other activities listed in the statute—swimming, skateboarding, and

---

[7] It defined recreational activities as those which provide diversions or amusements.  Curran, 53 Wn. App. at 364.

14

rock climbing—may commonly also be conducted both indoors and outdoors. Playing basketball is a physical activity commonly played outdoors on playgrounds where basketball hoops have been erected.

Finally, at the time he was injured, Archer was essentially utilizing a piece of playground equipment. This is similar to the plaintiff's activity which caused injury and was determined to be covered by recreational use immunity in Curran. 53 Wn. App. at 365. In Curran, the plaintiff was injured after attempting to hurdle a T-bar that was intended to be used to stretch calf and hamstring muscles. Id. at 360. The Curran court characterized the plaintiff's "play" as outdoor recreational activity and broadly held that RCW 4.24.210 applies to accidents on municipal park playground and exercise apparatus. Id. at 364-65. We similarly hold that playing basketball outside constitutes a recreational activity that qualifies as "outdoor recreation" under the statute. Consequently, we hold that RCW 4.24.210 applies to accidents involving this type of school district playground equipment.

IV.   Exception to Recreational Use Immunity

On appeal, Archer raises two issues for the first time in his reply brief. First, he implies that there is a genuine issue of material fact as to whether the exception to recreational use immunity outlined in RCW 4.24.210(4)(a) applies. RCW 4.24.210(4)(a) states that recreational use immunity would not protect a landowner from liability for injuries sustained to users by reason of a known dangerous artificial latent condition for which warning signs have not been conspicuously posted. Then, he argues that in order to discern whether this exception applies—

whether the District knew about the dangerous condition of the basketball pole—he should be afforded additional time to conduct discovery.

Below, in Archer's memo in opposition to the District's motion for summary judgment, he asserted that this statutory exception to recreational use immunity also precludes summary judgment. The District responded that even if the pole was in a dangerous condition, the condition of the pole was not known to the District as is required under the exception. Archer asserted that if the trial court did not dismiss the District's recreational use immunity defense based on his other arguments, it should defer ruling on the "known" element in RCW 4.24.210(4)(a). He claimed it should continue the District's motion under CR 56(f)[8] until the District fully answered plaintiff's discovery requests and until the Washington Supreme Court issued an opinion in a case Archer believed would be dispositive. The District responded, arguing that no continuance was justified. Specifically, it asserted that Archer did not provide a reason for not having conducted discovery in the matter, which was filed more than a year earlier. It maintained that no depositions had been taken because Archer did not request any, that Archer did not request supplemental discovery until after the District filed its motion for summary judgment, and that the District provided supplemental discovery

---

[8] Under CR 56(f), the trial court has the discretion to allow additional discovery or grant a continuance to allow a party opposing summary judgment to obtain information necessary for the required affidavits. A continuance may be denied if the requesting party does not offer a good reason for the delay in obtaining the desired evidence, the requesting party does not state what evidence would be established through the additional discovery, or if the desired evidence will not raise a genuine issue of material fact. Manteufel v. Safeco Ins. Co. of Am., 117 Wn. App. 168, 175, 68 P.3d 1093 (2003).

responses, but Archer did not request additional time to incorporate that information into his response to the motion for summary judgment.[9] The District further noted that Archer has not articulated what evidence would be established through any additional discovery.

Then, the District filed its motion for reconsideration, and Archer did not request a continuance in his opposition to that motion. In its order granting the District's motion for reconsideration, the trial court specifically noted that no exception to recreational use immunity applied in this case. As a result, it did not make a ruling on Archer's request for a continuance. And, he did not file a motion for reconsideration on the issue of a CR 56(f) continuance after the trial court granted the District's motion for reconsideration.

On appeal, in his reply brief, Archer argues that the trial court erred when it denied his CR 56(f) motion for a continuance, because the evidence does not establish that the District lacked actual knowledge of the structural defects in the basketball pole before the accident. The District filed a motion to strike these arguments, asserting that they were improperly raised for the first time in Archer's reply brief. It argued that RAP 10.3(a)(4) and 10.3(g) require Archer to assign error to this issue and make related arguments in his opening brief. Archer responded,

_____

[9] The District's attorney submitted a declaration stating that from the time she first appeared in July 2014 until February 23, 2015, Archer requested no depositions. She explained that the District provided discovery responses to Archer on August 21, 2014, the District filed its motion for summary judgment on January 29, 2015, and Archer did not claim any deficiencies with the District's discovery responses prior to the filing of the motion. She stated that Archer contacted her on January 30, 2015 to schedule a discovery conference—the day after the motion for summary judgment was filed—but did not claim any specific deficiencies in the District's discovery responses until February 6, 2015.

17

claiming that he raised these issues in his opening brief, because he "assigned error to the trial court's summary judgment dismissal, which assumed as a matter of law that the District did not know about the 'dangerous artificial latent condition' of its basketball pole."

But, Archer mentioned neither the applicability of the exception nor the fact that more discovery was required in his opening brief. His assignment of error to the trial court's summary judgment dismissal is insufficient to preserve these issues and arguments. See RAP 10.3(a)(4) (stating that a separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error must be in the appellant's brief). An issue is too late to warrant consideration when it is raised and argued for the first time in a reply brief. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Therefore we do not address these arguments.

V. Attorney Fees

The District argues it should be awarded attorney fees, because Archer's appeal is frivolous. RAP 18.9(a) permits the court to impose sanctions for a frivolous appeal. An appeal is frivolous if it raises no debatable issues on which reasonable minds might differ and it is so totally devoid of merit that no reasonable possibility of reversal exists. Hernandez v. Stender, 182 Wn. App. 52, 61, 358 P.3d 1169 (2014).

The District claims that fees are warranted because, "Archer presents no meritorious argument for the Court to ignore the plain language of the [recreational use immunity] statute." It asserts that the law is clear that public landowners are

18

eligible for recreational use immunity. Further, it argues that no reasonable mind could conclude that an outdoor playground was open to the public for any purpose other than recreation, or that land on playground facilities or the activity of basketball is excluded by RCW 4.24.210.

We conclude that Archer's appeal is not frivolous and, therefore, decline to award attorney fees to District.

We affirm.

WE CONCUR: