

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JAN 3 0 2014

CHIEF JUSTICE

This opinion was filed for record
at _____ on Jan. 30, 2014

Ronald R. Carpenter
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

SUSAN CAMICIA,

        Respondent,

    v.

HOWARD S. WRIGHT CONSTRUCTION CO.,

        Defendant,

    and

CITY OF MERCER ISLAND,

        Petitioner.

NO. 85583-8

EN BANC

Filed ___ JAN 3 0 2014 ___

STEPHENS, J.—This case asks us to consider the scope of Washington's recreational use immunity statute, former RCW 4.24.210 (2003).[1] Susan Camicia sustained severe injuries when she was thrown from her bicycle after colliding with a wooden post on a portion of the Interstate I-90 (I-90) bicycle trail located in the city of Mercer Island (City). In response to Camicia's negligence action

---

[1] All references to RCW 4.24.210 herein are to the former version as it was the statute in effect at the time of Camicia's injury in 2006.

against it, the City moved for summary judgment under RCW 4.24.210, which provides immunity from liability for unintentional injuries to landowners who "allow members of the public to use [the land] for the purposes of outdoor recreation . . . without charging a fee of any kind therefor[e]."

The Court of Appeals reversed the trial court's grant of summary judgment, holding recreational use immunity could not be determined as a matter of law because there were disputed issues of fact as to whether the trail served a recreational purpose as opposed to a transportation purpose. We agree and affirm the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

On review of summary judgment, the facts are viewed in the light most favorable to Camicia, the nonmoving party. CR 56; *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002).

A. The I-90 Bicycle Trail's Origins

The I-90 bicycle trail was built by the Washington State Department of Transportation (WSDOT) in the mid-to-late 1980s and runs from Seattle to Mercer Island across Lake Washington and to other areas in the Puget Sound. To prevent motor vehicles from entering the asphalt trail, WSDOT installed wooden posts, also called bollards, at some locations where the trail intersects city streets.

In October 2002, WSDOT published an evaluation of whether the trail was a public park or recreation area for purposes of federal law. Under the provision of

the Department of Transportation Act of 1966 known as "Section 4(f),"[2] the Secretary of Transportation may approve a transportation project's use of a public park or recreation area only if no reasonable alternative exists and all measures to reduce harm are taken. 49 U.S.C. § 303(c). Consideration under Section 4(f) is not required, however, when the officials having jurisdiction over the site determine that recreation is not a major purpose of the land and is only a secondary or occasional purpose. *See* former 23 C.F.R. § 771.135 (2002); *Stewart Park & Reserve Coal., Inc. v. Slater*, 352 F.3d 545, 556 (2d Cir. 2003) (quoting FED. HIGHWAY ADMIN., SECTION 4(F) POLICY PAPER (revised June 7, 1989) (Bikeways), *available at* http://www.dot.ca.gov/ser/vol1/sec1/ch1fedlaw/4policy.txt). In a policy paper, the Federal Highway Administration (FHA) advised local officials that when a bikeway "is primarily for transportation and is an integral part of the local transportation system," Section 4(f) does not apply. Bikeways, *supra*, § 13.

Applying this standard, WSDOT determined that the I-90 trail was primarily for transportation. In its discussion of the trail's history, the evaluation underscores that the trail was built "as part of a multi-modal transportation facility, using federal and state highway funds. No funds designated for recreational facilities were used in constructing the path and separate accounts were used to ensure the separation of recreational and transportation funds." Clerk's Papers

---

[2] The requirements of Section 4(f) are presently codified at 23 U.S.C. § 138 and 49 U.S.C. § 303. These requirements were "originally enacted as Section 4(f) of the Department of Transportation Act of 1966 and are still commonly referred to as 'Section 4(f).'" 23 C.F.R. § 774.1.

(CP) at 749. Although the trail is also used by pedestrians and others, it "[wa]s designed and built primarily for use by bicycles." *Id.* While the WSDOT recognized "the path can be used for recreational purposes," it perceived these uses to be minimal and fairly insignificant in comparison to its transportation function. *See id.* Indeed, WSDOT noted the trail serves as "the only means for non-motorized access to Mercer Island and across Lake Washington" and thus "is an important link in the regional transportation system." *Id.*

In accordance with these considerations, WSDOT concluded that because the trail was neither a public park nor recreation land for purposes of federal law, it was not a Section 4(f) resource. *Id.* The Federal Highway Administration found this determination reasonable, and concurred that—at least with respect to the portion over the Homer Hadley floating bridge—the primary use is transportation.

B. Transfer of the I-90 Bicycle Trail to Mercer Island

Shortly after construction, WSDOT arranged to cede ownership in the portion of the trail running over Mercer Island. In 1987, the City and WSDOT entered into the "I-90 Turnback and Landscape Maintenance Agreement." CP at 508. This agreement refers to the first phase in a process whereby certain roadways and rights-of-way would be transferred from WSDOT to the City. *Id.* During this first phase WSDOT agreed to pay the City to maintain and landscape these transit facilities. *Id.*

In 1991, the City created a document entitled "City of Mercer Island Comprehensive Park, Recreation, Open Space, Arts and Trails Plan." CP at 175. Within this document the "I-90 Trail and Linear Park" are described as follows:

> Primarily located along the north side of I-90, a multi-purpose pedestrian/bicycle regional trail will connect the East Channel and Floating bridges in 1992. . . . In total, there will be 8 miles of trails in the corridor. Both sides of I-90 and portions of the lids and overpasses will be heavily landscaped, and *used as park lands*. The linear park includes 90.5 acres along the freeway. The major portion of this park will buffer the Central Business District from the freeway.

CP at 178 (emphasis added).

On April 1, 2000, WSDOT conveyed to the City a portion of the trail, including the spot where Camicia was injured. The quitclaim deed provided:

> It is understood and agreed that the . . . property is transferred *for road/street purposes only, and no other use shall be made of said property without obtaining prior written approval of the grantor.* It is also understood and agreed that the grantee, its successors or assigns, shall not revise either the right of way lines or the access control without prior written approval from the grantor, its successors or assigns.

CP at 624 (emphasis added).

Despite this language, the City contends it understood the trail to be primarily recreational in nature. It points to a local ordinance prohibiting adult entertainment facilities near the trail while allowing such facilities near other public streets. Additionally, the city parks department maintains the I-90 Trail and Linear Park, while city streets are maintained by a separate department.

C. Camicia's Injury and Subsequent Proceedings

At the time of Camicia's accident, Sound Transit had retained Howard S. Wright Construction Company as the general contractor for a construction project at the South Transit Mercer Island Park & Ride facility. To prevent public access during construction, the contractor installed a chain link fence around the perimeter of the site. Some of the fence footing at this site protruded onto the I-90 bicycle trail where North Mercer Way intersects 81st Avenue Southeast.

The day of her accident, Camicia was bicycling along the I-90 trail as she approached this intersection. She veered left to avoid the fence footing to her right. She looked up just in time to see the wooden post, immediately hit it, and was thrown from her bike. As a result of her fall, Camicia suffered serious injuries that rendered her paralyzed.

Camicia brought suit against the City and the construction company in King County Superior Court.[3] CP at 1-8. The City moved for summary judgment, asserting immunity under Washington's recreational use immunity statute, RCW 4.24.210. Under this statute, "public or private landowners or others in lawful possession and control of any lands" who allow the public "to use them for the purposes of outdoor recreation," without charging a fee, are immune from liability for unintentional injuries to such users. RCW 4.24.210(1).

---

[3] The claims against the construction company have been stayed by stipulation during the pendency of this appeal.

Camicia argued immunity does not apply because the City failed to show that (1) it owned the trail; (2) it had the legal authority to open or close its portion of the trail; and (3) immunity otherwise applied to the trail, which Camicia characterized as a "regional public transportation route." CP at 303.

A hearing on the motion was held before Judge Douglas McBroom. The hearing transcript reflects that the court was troubled by the City's position that *any* recreational use on the trail, no matter how insignificant, would immunize the City. Following the hearing on the motion, the court denied the City's motion without prejudice. The court held that issues of fact remained as to the ownership and control of the trail and whether the trail was sufficiently recreational in nature for immunity to attach.

Meanwhile, the City surveyed the accident site to determine ownership. The case was transferred to Judge Laura Inveen, and the City renewed its motion for summary judgment, again asserting immunity under RCW 4.24.210. In support of its motion, the City submitted the quitclaim deed from WSDOT to Mercer Island, the survey, and supplemental declarations from the City Engineer Yamashita and its CR 30(b)(6) agent.

The court ruled that the City had established its ownership of the accident site. It rejected Camicia's argument that the trail's function as a transportation route affected the immunity inquiry. CP at 865 ("Although [the I-90 bicycle trail] is the only means of non-motorized travel across the water of Lake Washington, bicycle commuters are quite able to use Mercer Island surface roads to traverse the

north end of the island. Furthermore, no legal authority is offered for exempting 'regional transportation routes', nor for requiring the property to be a 'recreational facility' for immunity to apply."). The court granted summary judgment in the City's favor, and Camicia appealed.

The Court of Appeals reversed, agreeing with Judge McBroom that disputed factual issues precluded summary judgment. *Camicia v. Howard S. Wright Constr. Co.*, noted at 158 Wn. App. 1029 (2010). The court noted that the quitclaim deed expressly transferred the property to the City "'for road/street purposes only'" and that any other use required the grantor's advance written approval. *Id.*, slip op. at 11. Moreover, evidence suggested that the predecessor in interest, WSDOT, had viewed the trail as a transportation facility. *See id.*, slip op. at 12. Because the public purpose of the trail was disputed, the court held summary judgment was improper and remanded for trial.

The City petitioned for review, which we granted at 171 Wn.2d 1027, 257 P.3d 664 (2011).

## STANDARD OF REVIEW

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We review a grant of summary judgment de novo. *Campbell v. Ticor Title Ins. Co.*, 166 Wn.2d 466, 470, 209 P.3d 859 (2009). When the facts are undisputed, immunity is a question of law for the court. *See Beebe v. Moses*, 113 Wn. App. 464, 467, 54 P.3d 188 (2002) (noting that invitee status is question of

law where facts are undisputed); *Botka v. Estate of Hoerr*, 105 Wn. App. 974, 983, 21 P.3d 723 (2001) (noting that invitee status "can be implied from the prior conduct and statements of the property possessors or their agents"). But where material facts are disputed, a trial is needed to resolve the issue.[4]

Because recreational use immunity is an affirmative defense, the landowner asserting it carries the burden of proving entitlement to immunity under the statute. *See Olpinski v. Clement*, 73 Wn.2d 944, 950, 442 P.2d 260 (1968).

In construing a statute, our "fundamental objective . . . is to ascertain and carry out the intent of the legislature." *State v. Morales*, 173 Wn.2d 560, 567, 269 P.3d 263 (2012). "We determine the intent of the legislature primarily from the statutory language." *Id.* (citing *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995)). While legislative intent cannot overcome "an otherwise discernible, plain meaning" on the face of the statute, we must interpret the terms of a statute in harmony with its purpose. *N. Coast Air Servs., Ltd. v. Grumman Corp.*, 111 Wn.2d 315, 321, 759 P.2d 405 (1988).

---

[4] Amicus curiae Washington State Association of Municipal Attorneys (WSAMA) argues that making immunity a "'question of fact' is tantamount to no immunity at all." Br. of Amicus Curiae, WSAMA at 5. In general, whether immunity applies to a certain set of facts is a legal question. But when material facts are disputed, as here, a court may not determine its applicability as a matter of law. *See Goodman v. Goodman*, 128 Wn.2d 366, 373, 907 P.2d 290 (1995) ("Whether the statute of limitations bars a suit is a legal question, but the jury must decide the underlying factual questions unless the facts are susceptible of but one reasonable interpretation."); *Staats v. Brown*, 139 Wn.2d 757, 764, 991 P.2d 615 (2000) (noting that claims of state law immunity "are subject to the ordinary summary judgment standard which requires all facts and inferences to be construed most favorably to the nonmoving party" (citing CR 56)).

ANALYSIS

Washington's former recreational use immunity statute, RCW 4.24.210, provides in pertinent part:

> [A]ny public or private landowners or others in lawful possession and control of any lands whether designated resource, rural, or urban, or water areas or channels and lands adjacent to such areas or channels, who allow members of the public to use them *for the purposes of outdoor recreation*, which terms includes, but is not limited to, . . . hunting, fishing, camping, picnicking, swimming, hiking, bicycling, skateboarding or other nonmotorized wheel-based activities, hanggliding, paragliding, rock climbing, the riding of horses or other animals, clam digging, pleasure driving of off-road vehicles, snowmobiles, and other vehicles, boating, nature study, winter or water sports, viewing or enjoying historical, archeological, scenic, or scientific sites, without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users.

(Emphasis added.)

The recreational use immunity statute creates an exception to Washington's premise liability law regarding public invitees. At common law, a landowner's duty depended upon the plaintiff's status as an invitee, a licensee, or a trespasser. *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 128, 875 P.2d 621 (1994). While Washington traditionally recognized only business invitees, we broadened the invitee classification in 1966 to include the "'public invitee,'" defined as one "'invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.'" *McKinnon v. Wash. Fed. Sav. & Loan Ass'n*, 68 Wn.2d 644, 650-51, 414 P.2d 773 (1966) (rejecting economic benefit test as sole criterion defining invitee and adopting and quoting the broader definition from the *Restatement (Second) of Torts* § 332 (1965)).

In broadening the category of invitee in 1966, we followed a national trend of courts providing greater protection to the public when welcomed onto another's land. *Compare* RESTATEMENT OF TORTS § 332 (1934) (defining invitee only in terms of a business visitor), *with* RESTATEMENT (SECOND) OF TORTS § 332 (adding the classification "public invitee"). At the same time, in accord with other state legislatures, our legislature counterbalanced this expansion by enacting laws limiting landowner liability where public recreational interests were at stake. *See* RCW 4.24.210; *see also* John C. Barrett, *Good Sports and Bad Lands: The Application of Washington's Recreational Use Statute Limiting Landowner Liability*, 53 WASH. L. REV. 1, 2 (1977); *and see* 62 AM. JUR. 2D *Premises Liability* § 127 (2005) (noting that states sought "to reduce the growing tendency of landowners to withdraw land from recreational access by removing the risk of gratuitous tort liability").

Washington enacted RCW 4.24.210 in 1967 to immunize landowners who allow members of the public to use certain lands "for the purposes of outdoor recreation" from liability for most injuries. LAWS OF 1967, ch. 216, § 2. In doing so, the legislature carved out an exception to the common law "public purpose" invitee doctrine by exempting a particular "public purpose"—outdoor recreation. The legislature expressly intended that the statute would "encourage owners or others in lawful possession and control of land and water areas or channels to make them available to the public for recreational purposes by limiting their liability toward persons entering thereon." RCW 4.24.200 (statement of purpose).

Thus, "to be immune under RCW 4.24.210(1) the landowner must establish that the [land in question] (1) was open to members of the public (2) for recreational purposes and [that] (3) no fee of any kind was charged." *Cregan v. Fourth Mem'l Church*, 175 Wn.2d 279, 284, 285 P.3d 860 (2012). Because the City did not charge the public a fee for using the I-90 trail,[5] the only question is whether genuine issues of material fact exist as to whether the trail was open for recreational purposes.

### I. A landowner cannot "open" land that is already open to the public and which the landowner lacks authority to close

The recreational immunity statute applies only to those landowners with "lawful possession and control" over land who "allow members of the public" to use it "for the purposes of outdoor recreation." RCW 4.24.210(1). A landowner has "lawful possession and control" over land if it holds "continuing authority to determine whether the land should be open to the public." *Tennyson v. Plum Creek Timber Co.*, 73 Wn. App. 550, 557-58, 872 P.2d 524 (1994) (holding contractors could not claim recreational immunity because they "had no continuing authority to determine whether the land should be open to the public"). Absent

---

[5] Camicia submitted a 1987 document titled "I-90 Turnback and Landscape Maintenance Agreement." CP at 508. The document reflects that the City charged an annual fee totaling $68,000 to WSDOT for its "street and landscape maintenance and operation" of the I-90 trail on Mercer Island. *Id.* Camicia argues this arrangement precludes immunity because the statute does not apply when a land possessor charges a fee. Suppl. Br. of Resp't Camicia at 12 (citing RCW 4.24.210). This argument misreads RCW 4.24.210. The only reasonable reading of the statute is that an immunity-precluding fee is one charged *to the recreating public* using the land. *See Plano v. City of Renton*, 103 Wn. App. 910, 913, 14 P.3d 871 (2000) ("The question under Washington's statute . . . is whether Renton charges a 'fee of any kind' for using the moorage." (quoting RCW 4.24.210(1))). The operating fee charged to WSDOT does not preclude immunity.

that authority, a landowner cannot assert recreational immunity. A landowner must have authority to close the land to the recreating public because extending recreational immunity to landowners who lack authority to close the land to the public "would not further the purpose behind the act," namely to encourage landowners to open land that would not otherwise be open. *Id.* at 558; *see* RCW 4.24.200.

Viewed in the light most favorable to Camicia, the evidence gives rise to a material question of fact about the City's authority to close the trail to public transportation. WSDOT conveyed the land under a deed that limits its use to "road/street purposes only" absent "prior written approval of the grantor." CP at 624. In addition, the FHA's Section 4(f) determination and the WSDOT's supporting documents indicate that the I-90 trail is part of a multimodal transportation facility.

*II. Land must be opened for the purpose of recreation*

Immunity applies only when a landowner allows the public to use the land *"for the purposes* of outdoor recreation." RCW 4.24.210 (emphasis added). This reading is in accordance with the statute's plain language and the legislature's stated purpose to "encourage" land possessors to make their land "available to the public for recreational purposes by limiting their liability." RCW 4.24.200. Where land is open to the public for some other public purpose—for example as part of a public transportation corridor—the inducement of recreational use immunity is unnecessary. It would make little sense to provide immunity on the

basis of recreational use when the land would be held open to the public even in the absence of that use.

We reject the City's view that recreational immunity follows from the mere presence of incidental recreational use of land that is open to the public. *See Gaeta v. Seattle City Light*, 54 Wn. App. 603, 608, 774 P.2d 1255 (1989) (distinguishing between a road "built and maintained primarily for commercial use," which could not benefit from recreational use immunity, and the one at issue, which was "not a thoroughfare" but instead led only to land "left open . . . to the public for recreational use"). In support of its view, the City cites to several cases that do not address the question presented here. In *McCarver v. Manson Park & Rec. Dist.*, 92 Wn.2d 370, 597 P.2d 1362 (1979), it was undisputed that the public was allowed to enter for a recreational purpose (indeed, that was the *only* public purpose for the land). Likewise, the public license to recreate was clear in *Widman v. Johnson*, 81 Wn. App. 110, 111-12, 912 P.2d 1095 (1996), where a private company opened its forest land to the public exclusively for recreational purposes and posted signs stating, "'The Forest Land Behind This Sign Is Open For RECREATIONAL USE ONLY'" on "'virtually all entrances to its logging roads.'" That the logging roads could be used for nonrecreational uses, such as a driving shortcut by the nonrecreating public, did not change the fact that "[e]very reasonable person would also believe that [the company] had opened the [roads] for recreational use." *Id.* at 114; *see also Gaeta*, 54 Wn. App. at 607 (holding that so long as Seattle City Light

opened up the Diablo Dam to the public for recreation, immunity applied despite a contractual provision *compelling* it to open land for public recreational purposes).

In *Chamberlain v. Department of Transportation*, 79 Wn. App. 212, 214, 901 P.2d 344 (1995), recreational use immunity shielded the State from the claims asserted after a boy was killed on the Deception Pass Bridge overlook, but the nature of the land was not at issue. It was undisputed in *Chamberlain* that the overlook was recreational in nature and that viewing scenery was an outdoor recreational activity. *See id.* at 216; RCW 4.24.210 (defining "outdoor recreation" to include "viewing or enjoying . . . scenic [sites]").

Finally, the City cites *Riksem v. City of Seattle*, 47 Wn. App. 506, 508, 736 P.2d 275 (1987), a case arising out of injuries sustained by a bicyclist along the Burke-Gilman Trail in Seattle. The Court of Appeals in that case held that recreational use immunity applied, rejecting the plaintiff's claims premised on public policy and a constitutional equal protection claim. *Id.* at 511-13. Significantly, Riksem did not dispute that the trail was open to the public for the purposes of outdoor recreation or that he was a recreational user. Accordingly, the court did not address whether immunity would apply on land that was open to the public for nonrecreational purposes. It did, however, recognize that "[t]he manifest object of the recreational use statute is to provide free recreational areas to the public on land and in water areas *that might not otherwise be open to the public.*" *Id.* at 511 (emphasis added).

Extending the reach of RCW 4.24.210 to land that is open to the public for purposes other than recreation simply because some recreational use occurs not only undermines the statute's plain language and the legislature's intent but would also unjustly relieve the government of its common-law duty to maintain roadways in a condition reasonably safe for ordinary travel. *See Keller v. City of Spokane*, 146 Wn.2d 237, 249, 44 P.3d 845 (2002); see *generally Berglund v. Spokane County*, 4 Wn.2d 309, 313-14, 103 P.2d 355 (1940) (collecting cases). Recreational immunity would conceivably extend to every street and sidewalk in downtown Seattle, as these are open to the public without charge. Indeed, many streets and roads present some opportunity for "viewing or enjoying historical . . . sites," another recreational purpose under the statute. RCW 4.24.210(1). It would be absurd if Seattle could assert recreational use immunity for injury to a visitor to Pioneer Square simply because tourists are permitted to enter it without charge to view "scenic . . . sites." *See id.* We avoid any reading of the statute that would result in unlikely, absurd, or strained consequences. *State v. Neher*, 112 Wn.2d 347, 351, 771 P.2d 330 (1989). Erasing this long-standing duty was obviously not the purpose of the recreational immunity statute.

On the record in this case, we conclude that reasonable minds could differ whether the I-90 trail was opened for the purpose of recreational use. It is not enough for the City to show that the I-90 trail was opened for bicycling. Even though bicycling is mentioned in RCW 4.24.210, bicycling is not necessarily a recreational activity. We have recognized its dual status under our laws.

*Pudmaroff v. Allen,* 138 Wn.2d 55, 63 n.3, 977 P.2d 574 (1999) ("Bicyclists enjoy an anomalous place in the traffic safety laws of Washington. . . . Statutes variously treat bicycles and bike paths in a recreational context, and at other times the statutes treat them as part of the transportation system. These statutes indicate the Legislature has viewed bicycles and paths on a case by case basis, and without any continuity." (citations omitted)). That these purposes can be distinct is evidenced by RCW 35.75.060, under which certain funds may be expended on bicycle paths on the condition that the paths "shall be suitable for bicycle transportation purposes and not solely for recreation purposes." Thus, proof that land is opened for bicycling is not proof that it is opened for recreational purposes.

The City's treatment of the I-90 bicycle trail as part of its park system is certainly relevant. A fact finder could credit the City's evidence and find that the City's portion of the trail serves recreational purposes rather than transportation purposes. On the other hand, there is evidence that WSDOT determined the "major purpose" of the trail is transportation, finding it was built "as part of a multi-modal transportation facility, using federal and state highway funds." CP at 749. The trail serves as "the only means for non-motorized access to Mercer Island and across Lake Washington" and thus "is an important link in the regional transportation system." *Id.* Furthermore, "[n]o funds designated for recreational facilities were used in constructing the path and separate accounts were used to ensure the separation of recreational and transportation funds." *Id.* While it recognized that "the path can be used for recreational purposes," WSDOT

perceived these uses to be minimal and fairly insignificant in comparison to its transportation function. *See id.*

Furthermore, viewed in the light most favorable to Camicia, the deed conveying portions of the trail to the City suggests the City lacks the ability to close the trail to transportation. A factfinder could reasonably infer that the I-90 trail would be open to public bicycling for transportation purposes regardless of any recreational use or function, and that the public invitation was therefore not "for the purposes of outdoor recreation."[6]

In short, genuine issues of fact remain. Because the evidence relating to the application of recreational use immunity conflicts on material points, the facts must be determined by the fact finder, and summary judgment is precluded.

*III. A landowner's recreational use immunity does not depend on the plaintiff's activity at the time of injury*

As a final note, there is some suggestion that the application of recreational use immunity turns on whether Camicia was cycling home from work or merely

---

[6] As a procedural matter, the City contends the Court of Appeals should not have considered the language in the quitclaim deed—explicitly reserving the bike trail for "road/street purposes only"—for two reasons: first, appellate courts should reach only *legal* issues on appeal, and second, the court was required to provide notice under RAP 12.1 because the parties had not previously discussed the deed's language.

The City mischaracterizes the decision as one of fact. Whether evidence viewed in the light most favorable to the nonmoving party shows the absence of a genuine issue of material fact is a *legal* question. Nor did the court violate RAP 12.1, which allows—but does not require—the appellate court to notify the parties and allow supplemental briefing on an issue not discussed by the parties. Because the City submitted the deed in support of its motion for summary judgment, it should have expected the court to evaluate it in determining whether material factual issues remained. At any rate, because the City bore the burden of "showing" that there was no genuine issue of material fact, the court on de novo review properly considered all the evidence submitted. CR 56; RAP 9.12.

for pleasure when she was injured. We reject this view as insufficiently protective of landowner's who open their land for recreational purposes. Where the land at issue is shown to be recreational, immunity does not depend on whether the plaintiff was actually engaged in recreation at the time of injury. *See Gaeta*, 54 Wn. App. at 609 (holding that whether the public invitee "may have some commercial purpose in mind" was irrelevant to recreational immunity; instead, "[b]y opening up the lands for recreational use without a fee," the landowner "brought itself under the protection of the immunity statute"); *Howard v. United States*, 181 F.3d 1064, 1072-73 (9th Cir. 1999) (holding that "the proper focus is on the *landowner's* intent," and not the injured invitee's (citing *Gaeta*, 54 Wn. App. at 608-09)). Washington's recreational use immunity statute modifies the legal duty owed to public invitees by permitting landowners to invite the public onto the land for the "public purpose" of recreation. Rather than owing these invitees a duty of ordinary care, a landowner owes them only a duty to warn of "known dangerous artificial latent condition[s]." RCW 4.24.210(4)(a).

Distinguishing between recreating and nonrecreating users would strip Washington landowners of their statutory protection by hinging recreational immunity on the one factor not mentioned in the statute, and over which a landowner has no control: the intent of a public invitee. Because landowners cannot tell the private intentions of one invitee from another, they cannot keep those engaging in permitted activities but for nonrecreational reasons off the land, and therefore cannot limit their liability. A rational landowner faced with such a

rule would have every incentive to *close* the land to the public entirely. This is especially true because the landowner would be forced to take all the same precautions to safeguard the land opened up for public recreation as would apply in the absence of RCW 4.24.210, since he would still owe a greater duty of care to those who enter but are *not* recreating. The legislature plainly intended statutory immunity to apply based not on the intent of the public invitee, but on the landowner's action in opening land to the public for recreation.

## CONCLUSION

To establish entitlement to recreational use immunity, the City must prove its portion of the I-90 trail is open to the public for outdoor recreation. Whether the City allowed the public to use the trail for purposes of outdoor recreation is a contested factual issue. Because the trier of fact could find that the I-90 trail is open for the public purpose of transportation rather than recreational use, the Court of Appeals correctly held the City was not entitled to summary judgment in its favor. We affirm.

_____
Stephens, J.

WE CONCUR:

_____                    _____
                                                 Wiggins, J.

_____                    _____
Owens, J.

_____
Fairhurst, J.

*Camicia v. Howard S. Wright Constr. Co. & City of Mercer Island*

No. 85583-8

MADSEN, C.J. (dissenting)—The majority holds that RCW 4.24.210 confers immunity only if land is held open to the public solely for recreational use. Nothing in the statute or its purpose supports this conclusion.

The majority says that summary judgment is precluded on the issue of recreational use immunity because there are disputed issues of fact as to whether the part of the trail where plaintiff Ms. Susan Camicia's injuries occurred was open for transportation use or recreational use. Nothing in the statute or its purpose requires such an either/or determination. If land is made available for public recreation, the immunity may apply regardless of whether the land is also available to the public for transportation use. Nowhere does the statute say or even imply that land must be open to the public only for recreational use in order for the immunity to apply. Contrary to the majority's assertion, mixed uses do not preclude application of the statute when the landowner[1] has made the land available for the public recreational use in which the injured plaintiff was engaged.

The majority believes, however, that the recreational use immunity is unnecessary if the landowner has opened the land for a public nonrecreational use. The majority says

---

[1] The statute applies to landowners and others who are in possession and control of the land. Although for convenience, I generally refer to the "landowner," it is important to bear in mind the statute is more inclusive.

that it "make[s] little sense to provide immunity on the basis of recreational use when the land would be held open to the public even in the absence of that use." Majority at 13. This rationalization is deeply flawed and contrary to the purpose underlying the statute. The aim of the statute is not merely that land be open to the public; rather, the aim is that land be available *for public recreational use*. Land that is available to the public but not for recreational use does not meet the statutory purpose. And without the statutory immunity, the landowner who allows nonrecreational public use has no incentive to expand the invitation to include outdoor recreational use. In fact, under the majority a landowner is discouraged from doing so because to invite public recreational use would expose the landowner to liability for injuries to recreational users.

The result is that the public suffers from loss of the outdoor recreational opportunities that the statute is intended to gain for members of the public—space for bicycling, skiing, hiking, snowmobiling, and other recreational activities.

Here the recreational use at issue is bicycling. Provided that the landowner makes the land available for recreational bicycling, bicycling is deemed to be recreational use. No inquiry into the bicyclist's intent or purpose is required or appropriate. Here, the plaintiff was injured while bicycling on a trail that the city of Mercer Island (City) held open for recreational uses that include bicycling. Accordingly, she was engaged in recreational use within the meaning of the statute.

Under the plain terms of the recreational use statute, the City is entitled to recreational use immunity regardless of whether the portion of the Interstate 90 (I-90)

2

Trail (I-90 Trail) is open solely to recreational use or open for mixed uses consisting of transportation and recreation that includes bicycling. The trial court's grant of summary judgment in the City's favor should be affirmed.[2]

## Discussion

The majority misconstrues the recreational use statute by adding a restriction that does not exist in the statute's language or purpose, i.e., that land has to be available to the public solely for recreation in order for the immunity to apply.

RCW 4.24.210(1) provides in relevant part:

> [A]ny *public* or private *landowners . . . or others in lawful possession and control of any lands* whether designated resource, rural, or urban, or water areas or channels and lands adjacent to such areas or channels, *who allow members of the public to use* them *for* the purposes of *outdoor recreation,* which term includes . . . *bicycling* . . . , without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users.

(Emphasis added.)

It is indisputable that the City is a public landowner within the meaning of the statute. There is also no question that the City owns a portion of the I-90 Trail, which passes through Mercer Island. The City's ownership is established by a quitclaim deed from the Washington State Department of Transportation (WSDOT), which built the I-90 Trail.

---

[2] To clarify the majority's description of the procedural course of this case, after the City's motion for summary judgment was denied without prejudice, the City collected evidence on its ownership and control of the portion of the trail at issue here. During this period, the judge who heard the motion originally, Judge Douglas McBroom, retired and the case was transferred to Judge Laura Inveen. The City then renewed its motion, which was granted. The trial court certified this partial summary judgment as appealable under CR 54(b).

3

*THE CITY OPENED THE LAND TO PUBLIC RECREATIONAL BICYCLING*

Whether the City made the trail available for recreational use involves two questions in this case: whether the City in fact made the trail available for recreation and whether the City had the power to do so.

Whether a landowner has opened land for public recreation should be viewed from the standpoint of the landowner. *See Cultee v. City of Tacoma*, 95 Wn. App. 505, 514, 977 P.2d 15 (1999); *Gaeta v. Seattle City Light*, 54 Wn. App. 603, 608, 774 P.2d 1255 (1989). All of the facts and circumstances, objectively viewed, should be considered, and here they show the City holds the land open to recreation as a public use in addition to public use of the trail for transportation.

*The City Continued To Make the Trail Available for Recreational Use after the City Acquired Title*

At the time ownership was transferred to the City, the trail already served as a pedestrian and bicycle trail. It makes no difference that the trail was already available to the public for recreational use. The evidence establishes that after it acquired title, the City *continued to hold the trail open* to the public for recreational uses that include bicycling. The statute's purpose of encouraging landowners to make land available for recreational use is served both when a landowner opens land to public use for the first time and when a landowner continues to keep land available for such use and does not withdraw permission to recreationally use the land. The immunity should apply when a landowner's successor in interest continues to make the land available for public outdoor recreational use, as the Court of Appeals has recognized. *See Riksem v. City of Seattle*,

4

47 Wn. App. 506, 510, 736 P.2d 275 (1987) (in light of the statute's purpose "[i]t would not make sense to provide immunity to only those owners who originally open up the land for recreational purposes").

There is abundant evidence in the record showing, and reasonable minds cannot differ on this, that the City allows the public to use the portion of the trail in its ownership for recreational uses, including bicycling.

*The City May Be Entitled to Recreational Use Immunity Notwithstanding Use of the Trail for Transportation; Mixed Public Uses Do Not Preclude the Immunity*

The majority's view that a fact question remains is not an issue of whether the public was allowed to use the trail for recreation, including bicycling, but instead is tied to the majority's belief that mixed public uses preclude application of the recreational use statute. The majority's premise is that if the trail is used for public transportation it cannot be recreational land within the meaning of the statute, i.e., that when public is allowed to use land for both transportation and recreation, the immunity statute does not apply.

The premise is false. Nothing in RCW 4.24.210 precludes mixed public uses on land that was made available for public outdoor recreation. The statutory language is plain: "any public . . . landowners . . . in lawful possession and control of any lands . . . who allow members of the public to use them for the purposes of outdoor recreation"

may qualify for the immunity. RCW 4.24.210. There is no proviso stating that the immunity is available only if the recreational use is the sole public use of the land.[3]

Moreover, the public policy underscoring the recreational use statute is furthered and the purpose of the statute is met when land is held open for public recreational use, regardless of whether it is also held open for public nonrecreational uses. The recreational use statute was enacted because outdoor recreational opportunities were inadequate to meet the state's expanding need and demand. *Ochampaugh v. City of Seattle*, 91 Wn.2d 514, 523, 588 P.2d 1351 (1979). The legislature's intent was to meet this need by providing immunity to "encourage landowners to open up their lands to the public for recreational purposes." *Davis v. State*, 144 Wn.2d 612, 616, 30 P.3d 460 (2001); *accord Swinehart v. City of Spokane*, 145 Wn. App. 836, 845, 187 P.3d 345 (2008). This goal is met when the public is allowed to engage in public recreation on the land regardless of whether the public is also allowed to engage in some other use of the land.

> *Immunity Is Needed To Encourage Land Availability for Public Recreation*
> *Even When the Land Is Available for Public Nonrecreational Use*

The majority announces, however, that the immunity is unnecessary to encourage landowners to open land that is already held open for a nonrecreational purpose. Majority at 13. The majority says that "[w]here land is open to the public for some other

---

[3] When land is held available for mixed public uses, the immunity does not apply in case of every injury that might occur on the land because the statute concerns only recreational uses. If a member of the public suffers injuries during nonrecreational activity, no immunity is available under RCW 4.24.210.

public purpose—for example as part of a public transportation corridor—the inducement of recreational use immunity is unnecessary. It would make little sense to provide immunity on the basis of recreational use when the land would be held open to the public even in the absence of that use." Majority at 13.

This is exceedingly flawed reasoning because unless the land is made available to the public for recreational use, the legislative goal is not met. Land open for *non*recreational public use does not meet the need for outdoor recreational opportunities—*unless the land is additionally* made available for public *recreation.* If the land is not available to the public for recreational use, the expanding need for outdoor recreational land for public use is not met. The legislature has clearly decided that the inducement of immunity is necessary to encourage recreational use, i.e., the type of public use that is of concern under the statute.

The court should hold that to come within the scope of the statute the landowner must make land available for public recreational use. Whether the land is available for some other public use does not matter. The court should also conclude that here the evidence shows that the City held the land open for recreational use by the public as well as for transportation.

*THE CITY HAD AUTHORITY TO OPEN THE TRAIL TO PUBLIC RECREATIONAL BICYCLING*

The second issue is whether the City, which did in fact allow the public to use the trail for recreational use, had the authority to do so. This is a question of whether the City was a landowner in possession and control of the land with the power to make it

7

available to the public for recreational use as contemplated by RCW 4.24.210. As noted, the City owns the portion of the trail at issue here.

*The Recreational Use Statute Does Not Require "Continuing Authority"*

Ms. Camicia argues, and the majority agrees, that in order to have lawful "possession and control" over land the City, as landowner, must have "'continuing authority to determine whether the land should be open to the public.'" Majority at 12 (quoting *Tennyson v. Plum Creek Timber Co.*, 73 Wn. App. 550, 557-58, 872 P.2d 524 (1994)). In relying on *Tennyson*, the majority makes an unfortunate but very big mistake. *Tennyson* does not purport to state a rule of law for every case under RCW 4.24.210 and *Tennyson* is utterly inapposite to the present case.

In *Tennyson*, the plaintiff sued contractors who had excavated the side of a gravel mound on land owned by Plum Creek Timber Company, pursuant to a contract for the work. The contracted-for excavation work was completed 10 months before the plaintiff was injured when he rode his motorcycle up the mound and fell over the edge of the drop-off created by the excavation.

The contractors sought immunity under RCW 4.24.210, but they were not the landowners. They argued entitlement to immunity under the statute on the ground they were, in the language of RCW 4.24.210, "others in lawful possession and control" of the land when the alleged negligent acts occurred. The Court of Appeals rejected the claim, concluding that the "possession and control" requirement means "a broader, more permanent interest in the land" than the contractors' rights under their contract.

8

*Tennyson*, 73 Wn. App. at 557-58. The contractors no longer had even contractual authority after they completed the contract work, i.e., they had no "continuing authority to determine whether the land should be open to the public." *Id.* at 558.

*Tennyson* is not remotely applicable, and it certainly does not state an applicable rule of law. *Tennyson* supports the proposition that "the immunity of Washington's recreational land use statute does not apply to contractors because they have no control or permanent interest in the land and their limited rights in the land expire when their work is complete." 16A DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 18:18 (3d ed. 2013).

*Authority To Close the Trail to Transportation Is Irrelevant*

The majority also believes that for the statute to apply the landowner must have authority to close the land to the public because extending the immunity to a landowner lacking authority to close the land to public recreation would not further the purpose of encouraging landowners to open land that otherwise would not be open. Majority at 12-13 (citing *Tennyson*, 73 Wn. App. at 558). The majority then concludes that here there is a question of fact about authority to close the land since, the majority says, the evidence gives rise to a question of fact "about the City's authority to close the trail *to public transportation.*" Majority at 13 (emphasis added).

There is a vast difference between authority to close land to public *recreation* if the land had been open for recreational use and authority to close land to public

9

*transportation.* While the former at least seems to implicate the statute's goal of encouraging additional opportunities for outdoor recreation, the latter does not.

Whether the City can bar the public from using the land for transportation is irrelevant. The statute says the immunity applies when landowners "allow members of the public to use" their land for "outdoor *recreation.*" RCW 4.24.210(1) (emphasis added). And RCW 4.24.200 explicitly says that the purpose of RCW 4.24.210 is "to encourage owners or others in lawful possession and control of land and water areas or channels to make them available to the public for *recreational purposes.*" (Emphasis added.) The purpose of the statute to encourage land availability for public recreation is served when land is made available for public recreation. Thus, the relevant inquiry under the statute is whether the landowner has authority to make the land available for public recreation.

An issue of fact must be genuine to preclude summary judgment. CR 56(c). A material fact is one that affects the outcome of the litigation. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 861, 93 P.3d 108 (2004). Whether the City has authority to close the land to *transportation* is not a question of material fact. It has no bearing whatsoever on whether a landowner can make the land available for public recreational use. Thus, the question whether the City had authority to close the trail to transportation does not matter and should not preclude summary judgment.[4]

---

[4] Ms. Camicia presents documentary evidence she argues shows the City lacked authority to close the land to transportation use. First, the quitclaim deed to the City from WSDOT states that the trail is to be used for road or street purposes. Even if this provision in the quitclaim deed

10

The majority says, though, that extending the reach of the statute to the public for

purposes other than recreation would also relieve the government of its obligation to

---

were relevant in the face of the City's ownership and its actual and consistent operation of the bicycle path to include recreational use, and even if the provision were to mean the City *cannot close* the path to *transportation*, this does not mean that the City lacks control of the bicycle path to make it available for recreational use. First, as mentioned, land may be used by the public for more than one purpose. If one of the uses of the land is recreation because the landowner has opened or holds open the land for this use, then the statutory immunity may apply. Moreover, several cases that involve the recreational use statute have involved byways that are both routes for transportation as well as recreational lands. *E.g.*, *Chamberlain v. Dep't of Transp.*, 79 Wn. App. 212, 901 P.2d 344 (1995) (Deception Pass Bridge used for transportation and recreational viewing); *Gaeta*, 54 Wn. App. 603 (road across Diablo Dam used for transportation to resort and for recreation); *Riksem*, 47 Wn. App. 506 (mixed-use Burke-Gilman trail used for transportation and recreation).

Second, that the deed contains the provision stating that the I-90 Trail within the City's ownership must be used for "road/street purposes only" does not foreclose the City's right to open it to recreational use; nothing about recreational bicycling on the trail is inconsistent with the trail's use for transportation as well. This is shown, for example, by state statutes that govern funding for transportation and show that a bicycle trail integrated with a transportation route can be for "highway purposes." RCW 47.30.005 says that for purposes of chapter 47.30 RCW, "'trail' or 'path' means a public way constructed primarily for and open to pedestrians, equestrians, or bicyclists, or any combination thereof . . . ." RCW 47.30.060 provides that "the establishment of paths and trails and the expenditure of funds as authorized by RCW 47.30.030, as now or hereafter amended, shall be deemed to be for *highway, road, and street purposes.* . . ." (Emphasis added.) RCW 47.30.030 provides for expenditure of gas tax funds by the department of transportation for such trails. *See* RCW 46.68.090. In light of these statutes, use of the trail for recreational bicycling is not inconsistent with a restriction that it be used for road/street purposes only.

Ms. Camicia also submitted documents relating to federal funding for the I-90 Trail, indicating the trail is "part of a multimodal transportation facility." Majority at 13. These so-called Section 4(f) documents explicitly recognize that recreational use is a purpose of the I-90 Trail, in addition to transportation. (In addition, most of the documents concern the I-90 Trail on the floating bridge and not the portion owned by the City.) WSDOT's own evaluations also note the path can be used for recreation. *See, e.g.*, CP at 749. Although the majority notes that WSDOT recognized the pathway as a major transportation link, majority at 4, this reference is to a part of the I-90 Trail that is not in the City's ownership. Environmental assessment documents submitted by Ms. Camicia likewise show the pathway's use for recreation in addition to transportation. Because mixed use should not bar application of the recreational use statute, as both its language and purpose show, these various documents do not establish a material fact question that bars summary judgment in the City's favor. They show that while various agencies classified the pathway as a transportation route for purposes of project approvals and funding, all of the agencies also recognized that the pathway is a shared-use path with recreational use being an important use.

11

maintain roadways in a safe condition for ordinary travel. This is incorrect. Immunity does not apply to every individual injured on land made available for public recreation. Only injuries incurred during recreational use for which the land is open will trigger the immunity. If a road were to be open to public recreation and transportation, the government duty to maintain roads in a safe condition would still exist.

*Bicycle Paths and Trails Are Not Equivalent to Roads for Motor Vehicles Like Cars, Trucks, Vans, and Buses*

The majority also seems to think that activity on any road or street can qualify as recreational use because travel on their byways could be sightseeing. Initially, it is not true that any activity on land that is or might be recreational use under the statute automatically qualifies for the immunity. The landowner must affirmatively make the land available for recreation. And if a government claimed that city streets are recreational land and therefore immunity is always available for sightseeing or pleasure driving, a court can and should recognize the ruse and make the determination that as a matter of law reasonable minds cannot differ that cities and other government entities do not open their general street, road, highway, and freeway systems as recreational land.

Moreover, this case shows a significant difference between trails and pathways on the one hand and city streets on the other. The evidence shows that motorized vehicular traffic that routinely travels city streets and is comprised of cars, vans, buses, trucks, and the like is not permitted on the bicycle trail here. This is recognized in state statutes. *E.g.*, RCW 47.30.005 (for purposes of chapter 47.30 RCW, "'trail' or 'path' means a public way constructed primarily for and open to pedestrians, equestrians, or bicyclists,

12

or any combination thereof"). Trails open to pedestrian, bicycle, and equestrian uses are thus fundamentally different from city streets. Here, as the majority explicitly notes, motor vehicles are prevented from accessing the trail by placement of bollards. Majority at 2. The case cited by the majority, *Pudmaroff v. Allen*, 138 Wn.2d 55, 63 n.3, 977 P.2d 574 (1999), is not to the contrary. It points out that state "[s]tatutes variously treat bicycles and bike paths in a recreational context, and at other times the statutes treat them as part of the transportation system." *Id.* As explained above, transportation use does not foreclose additional use of bicycle paths and trails for recreation.

The majority raises spectres of unlimited immunity, with the obvious purpose to justify its exceedingly narrow interpretation of the recreational use statute. It relies on supposed facts not before the court and imagined scenarios of expansive claims of immunity[5] to create alarm. The majority does this without any idea what arguments and authority might be presented in future cases. Then, with these self-created fears in mind, the majority reads the immunity out of cases where it plainly ought to apply, i.e., where a landowner makes trails and pathways open to the public for recreational walking, jogging, and bicycling.

The court should hold that the City had the authority under RCW 4.24.210 to open the portion of the I-90 Trail to recreational use, as factually it has done.

---

[5] In the decades since the recreational use statute was enacted, no appellant-city has claimed claiming immunity for routine traffic on city streets.

13

*No Inquiry Into a Bicyclist's Intent or Purpose Is Required by RCW 4.24.210*

Next, the majority says that bicycling is not necessarily a recreational activity, referring to the legislature's treatment of bicycling in various statutes as both recreational and for transportation purposes. While this is true as a general proposition, the majority fails to properly consider the precise statute at issue here and how it treats bicycling.

The City urges that because Ms. Camicia was bicycling at the time of the accident causing her injuries, she was engaged in outdoor recreational use within the meaning of the statute. The City is correct.

The recreational use statute specifically lists bicycling as a recreational use. The immunity applies when members of the public are allowed "to use" the land "for the purposes of outdoor recreation, which term includes . . . bicycling." RCW 4.24.210(1). Provided that no fee is charged for this activity, the landowner "shall not be liable for unintentional injuries to such users." *Id.* "Such users" in this context is plainly a reference to members of the public bicycling on the land.

There is no qualifying language that specifies that the bicyclist must be engaged in "bicycling for the purpose of recreation" or "bicycling for pleasure." Instead, the statute refers only to "bicycling." In contrast, when the statute refers to other devices on or in which a person might travel, the statute limits the scope of immunity by specifically narrowing the qualifying uses. RCW 4.24.210(1) includes in its list of recreational uses the "*pleasure* driving of off-road vehicles, snowmobiles, and other vehicles." *Id.* (emphasis added).

14

When the legislature uses certain language in one context of a statute and different or dissimilar language in another, a difference in intent is presumed. *Millay v. Cam*, 135 Wn.2d 193, 202, 955 P.2d 791 (1998). Thus, the physical activity of "bicycling" by a member of the public is deemed under the statute to be recreational use, provided that the landowner has affirmatively made the land available to the public for recreational bicycling. No inquiry into the bicyclist's intent or purpose is necessary or appropriate.

However, the majority is correct that just because land is opened to bicycling does not mean it is open for recreational use. The purpose of the statute is that land be open for public recreational uses. Accordingly, the landowner, who has the burden of proof, must establish that it held the land open to the public for recreational bicycle use. Once that is established, the statute then provides that if a member of the public is bicycling on the land, it is deemed to be recreational use. Thus, there must be an inquiry into whether, from the landowner's viewpoint, the landowner held the land open to public recreational bicycling.

## Conclusion

The majority restricts application of the recreational use immunity statute to land that the landowner or possessor opens to the public *solely* for outdoor recreational use. If the land is open for any other public use, then, according to the majority, the immunity will not apply. Here, because the trail within the City's ownership is also open to transportation use, the majority's view is that it cannot be open to the public for

15

recreational use. The majority also says that the statutory immunity is unnecessary if the land is already open for nonrecreational public use.

Neither of these propositions is correct. The statute does not contain any limitation to the effect that the immunity cannot apply in the case of mixed uses of the land and the purpose of the statute is not served by the majority's limiting construction. If the landowner opens land to the public for recreational use in addition to a nonrecreational use, the purpose of the statute to encourage opportunities for outdoor recreation is met. And just because the public might be able to use the land for purposes other than recreation does not meet the statute's goal of land for *recreation*.

The trial court's grant of partial summary judgment was appropriate. Ms. Camicia was riding her bicycle on the part of the I-90 Trail owned by the City at the time the accident occurred and she was injured. The City held this land open for public recreational bicycling. The recreational use statute specifically identifies bicycling as a recreational use within the statute, regardless of the rider's actual purpose. The injuries to Ms. Camicia were unintentional and the City charged no fee for recreational use of the trail. Accordingly, the statute applies and the City should be immune from suit based on the injuries Ms. Camicia suffered while riding her bicycle on the trail.

The Court of Appeals should be reversed and the trial court's grant of summary judgment in favor of the City should be reinstated.

16

_Madsen, C.J._

_Alexander, J.P.T._