# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MARIE-CAROLINE MOIR,<br><br>       Appellant,<br><br>       v.<br><br>SEATTLE CENTRAL COLLEGE, an<br>agency of the State of Washington,<br><br>       Respondent. | No. 78362-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: October 21, 2019 |

APPELWICK, C.J. — Moir appeals the summary judgment dismissal of her hostile work environment sexual harassment claim. Because no genuine issue of material fact precluded dismissal of Moir's claim, we affirm.

## FACTS

In 2008, Marie-Caroline Moir began working as a part-time faculty member in the English Department at Seattle Central College (SCC). Douglas Cole, who had worked at SCC since 1990, was a full-time tenured faculty member in the same department.

In August 2012, Cole unexpectedly kissed Moir while the two were in his office. Moir pushed Cole away because the kiss was unwelcome. Days later, Cole sent Moir several crude and sexually graphic e-mails. In response, Moir told Cole that his e-mails were gross. She did not report Cole's unwanted kiss or his inappropriate e-mails to SCC at that time.

In October 2012, Cole sent sexually-oriented text messages to Moir's mobile phone. Moir responded to Cole by texting, "Stop."[1] Moir did not then inform anyone at SCC about Cole's text messages.

In spring 2014, Cole regularly greeted Moir by saying, "Hey, sexy" or "Hi, gorgeous," complimented Moir's appearance and clothing, "visually appraised [her] from top to bottom," and once "caressed [her] arm up and down with the back of his hand several times." Moir did not notify SCC about Cole's comments or behavior at the time of his conduct.

In October 2014, after receiving an unwanted hug from Cole at an off-campus memorial service, Moir told Phebe Jewell about Cole's prior inappropriate behavior.[2] On October 27, Jewell informed SCC's dean of Humanities and Social Sciences, Bradly Lane, that multiple female faculty in the English department—who wished to remain anonymous—stated Cole engaged in sexualized workplace behavior toward them. Moir was the only female faculty member who met with Lane to discuss specific concerns about Cole.

On October 28, 2014, Lane spoke with Cole "about [Cole's] allegedly sexualized behavior, though [Cole] was not aware of the identity of anyone who had expressed concerns." Lane instructed Cole to (1) "set clear boundaries between himself and younger female members of the department," (2) "redouble

---

[1] At that point, Cole stopped sending Moir sexually graphic writings. Between January and March 2013, however, Cole sent Moir three non-sexual text messages during faculty meetings. Moir did not report these text messages to anyone at SCC. For the remainder of 2013, Moir had little to no interaction with Cole.

[2] Jewell was Chair of the English Department—a position that served an "organizational," rather than a managerial or supervisory, role at SCC.

his efforts to set clear parameters when interacting with colleagues," and (3) "remain professional with his colleagues at all times." Cole then stopped communicating with Moir in a sexually explicit manner. He also stopped touching Moir and looking at her appraisingly.

Between October 28 and November 13, 2014, Cole glared or stared at Moir on two occasions without saying anything. Cole also sat across from Moir at a faculty meeting and spread his legs and pointed his crotch in Moir's direction.

On November 13, 2014, Moir met with Lane "to make a formal complaint about Cole."[3] During this meeting, Moir showed Lane the October 2012 text messages and e-mails Cole sent her and told Lane about Cole's sexualized behavior in spring 2014. Moir also told Lane that her ability to work had been affected because she tried to avoid interacting with Cole. Based on the record, Moir did not notify Lane of Cole's then recent instances of glaring and pointing his crotch at her. Lane told Moir that she should file a formal complaint against Cole. The record does not contain a formal written complaint from Moir. However, a few days later, Lane forwarded Moir's request to file a formal complaint to SCC's human resources administrator, Kathryn Woodley.

SCC then commenced a lengthy investigation of Cole's conduct that concluded in July 2015.[4] In June 2015, an external investigator found, by "clear

---

[3] Moir called Jewell's October 27, 2014 discussion with Lane an "informal complaint" but referenced her November 13, 2014 meeting with Lane as a "formal complaint."

[4] Moir grew frustrated about the length of SCC's investigation and, in March 2015, "filed an official union grievance" against Cole. Moir's grievance was heard later that month. During the hearing, Moir was informed that SCC "fully embrace[d] and ha[d] already implemented the remedies sought by the grievance including:

3

and convincing evidence," that Cole engaged in sexually explicit communications, and inappropriate, unwelcome touching and attention toward Moir and other faculty members.

In July 2015, Charles Sims, the Seattle College District's chief human resources officer, after meeting with Moir and Cole, agreed with the investigator's "conclusions that 'the evidence clearly and convincingly supported all of the allegations of inappropriate and sexualized behavior by Cole toward Moir . . . and others.'" Despite this conclusion, Sims noted that "Cole is shielded from formal disciplinary action by a provision in the faculty collective bargaining agreement, with which management admittedly failed to comply in providing Mr. Cole with a timely notification of the complaint filed by Ms. Moir in November of 2014."[5] Sims then formally closed Moir's complaint by ordering "remedies that were put in place during the investigation [to] be continued on a permanent basis," including, among others, the following:

> Mr. Cole will remain under the "no contact" order regarding Ms. [Moir]. Anything beyond essential communications that are job related, without consent by Ms. Cole, will be considered a violation

---

Updating Ms. Moir on the current status of her complaint of sexual harassment by a faculty, [and] assuring her that the complaint is being fully investigated by an external investigator retained by the college."

[5] Sims also noted that"[r]egardless of the College's ability to impose formal discipline on Mr. Cole at this time, . . .[t]he hurt, fear and anxiety, emotional distress, and general disrespect that he has inflicted on his colleagues cannot simply be ignored and dismissed." Given Cole's past behavior, Sims determined that if Cole "commits any future violations of the rights of his colleagues or of students to teach and learn without fear of harassment or any form of threat or retaliation by him, his career as a tenured faculty with the district will be over."

of the no contact condition, and will result in immediate corrective action up to and including termination.[6]

In spring 2016, while exiting a bathroom, Cole smiled at Moir, raised an eyebrow and wagged his head at Moir, as she walked down a hallway. On another occasion he called out to Moir as she walked by the mailroom and offered her a 1970's social science textbook, commenting that he thought she could use it for one of her classes. On March 17, 2016, Moir e-mailed Lane and other SCC administrators to report Cole's violation of the "no contact" order.[7] Less than an hour later, Lane responded and offered to meet Moir to "address [her] concerns" with Cole. Moir and Lane met on March 21, 2016. Afterward, Moir e-mailed a colleague and expressed that her meeting with Lane "went VERY well" and said, "[Lane] seems super-committed to addressing the [Cole] issues, and FINALLY a note will appear in his file. If he does anything else, he will be terminated. :)"[8]

In November 2016, Moir filed a sex discrimination suit against SCC, alleging she was subjected to hostile work environment sexual harassment by Cole, in violation of the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW. SCC moved for summary judgment, arguing that it was not vicariously liable for Cole's misconduct. Concluding that SCC's response to Cole's misconduct was

---

[6] To the extent SCC put in place a temporary "no contact" order prior to Sims making such order permanent, the effective date of that temporary order is not reflected in the record. Nor does the record contain any allegations from Moir that Cole violated a temporary no contact order.

[7] At this point, Lane had been promoted to Executive Dean for Academic Affairs at SCC.

[8] Moir's e-mail also contained a smiley face emoji. An "emoji" is a symbol or image used in electronic communication to convey information about the writer's emotions.

adequate as a matter of law, the trial court granted SCC's motion and dismissed Moir's lawsuit.

Moir appeals.

## DISCUSSION

Moir assigns error to the trial court's summary judgment dismissal of her hostile work environment sexual harassment claim.

We review summary judgment orders de novo and engage in the same inquiry as the trial court. See Youngblood v. Schireman, 53 Wn. App. 95, 99, 765 P.2d 1312 (1988). Summary judgment is appropriate "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."[9] Camicia v. Howard S. Wright Constr. Co., 179 Wn.2d 684, 693, 317 P.3d 987 (2014); CR 56(c). On review, we look at the facts in the light most favorable to the nonmoving party. Camicia, 179 Wn.2d at 693 n.4.

## I. Sexual Harassment Claim

Under the WLAD, Washington courts recognize two types of sex discrimination claims: the quid pro quo sexual harassment claim and the hostile work environment claim. Antonius v. King County, 153 Wn.2d 256, 261, 103 P.3d 729 (2004). Here, Moir asserts a hostile work environment claim, an action in which the employee seeks to hold the employer responsible for a hostile work environment caused by a supervisor or co-worker's sexual harassment of the

---

[9] A material fact is one upon which the outcome of the litigation depends. Greater Harbor 2000 v. City of Seattle, 132 Wn.2d 267, 279, 937 P.2d 1082 (1997).

employee. Glasgow v. Georgia-Pac. Corp., 103 Wn.2d 401, 405, 693 P.2d 708 (1985).

To establish a hostile work environment claim, Moir must present evidence that the harassment (1) was offensive and unwelcome; (2) was because of sex or gender; (3) affected the terms or conditions of employment; and (4) is imputed to the employer. Washington v. Boeing Co., 105 Wn. App. 1, 10, 19 P.3d 1041 (2000). The failure to provide competent evidence of any one of the mandatory elements of a prima facie case is fatal to a workplace discrimination suit. See Sangster v. Albertson's, Inc., 99 Wn. App. 156, 160, 991 P.2d 674 (2000).

Moir alleges she suffered sexual harassment three times in the weeks following her October 2014 "reporting of events" to Jewell. She argues, during this time, Cole stared or glared at her twice and sat across from her in a department meeting with his legs spread and pointing his crotch at her. Moir also claims Cole harassed her twice in spring 2016, when he offered her a book and "when smiling and raising his eyebrows and wagging his head at her from the bathroom door."

Agreeing for purposes of summary judgment that Moir could establish issues of material fact regarding the first three elements, the parties focus their arguments on the fourth element: imputation—i.e., whether Cole's conduct may be imputed to SCC. Washington courts recognize two ways to impute harassment to an employer. Boeing, 105 Wn. App. at 11. First, a manager or owner may personally participate in the harassment. Id. Second, if the harasser is not in management, the harassment is imputable only if "the employer (1) authorized,

knew, or should have known of the harassment and (2) failed to take reasonably prompt and adequate corrective action." Id.

A. Imputation: Adequacy of Employer's Corrective Action

Here, Moir contends that Cole's conduct is imputable to SCC because SCC was aware of the harassment and "failed to take prompt and adequate action." Based on the evidence set forth in the record, we disagree.

There is no evidence in the record to indicate that SCC was contemporaneously aware of (1) the sexually graphic e-mails and text messages Cole sent Moir in 2012, (2) Cole's spring 2014 sexualized comments and behavior, or (3) Cole's unwelcomed hugging of Moir in October 2014. Rather, the facts show that SCC only became aware of Cole's inappropriate sexualized conduct on October 27, 2014. The next day, on October 28, 2014, SCC admonished Cole for his sexualized behavior toward other staff members. Thereafter, the evidence shows that Cole did not send Moir any more sexually explicit writings, make inappropriate sexualized comments toward her, or touch her again. As to Cole's sexually explicit conduct, we conclude SCC's response was adequate.

Next, regarding Cole's glaring and crotch-pointing at Moir[10] between October 28 and November 13, 2014, the evidence on record does not show that

_____

[10] Moir cites Perry v. Costco Wholesale, Inc., 123 Wn. App. 783, 98 P.3d 1264 (2004), to argue that Cole's glaring at her and sitting with his legs apart during a meeting was a continuation of his sexual harassment. We need not analyze this argument because, for purposes of summary judgment and viewing the facts in the light most favorable to Moir, we assume Moir would be able to establish Cole's conduct as sexual harassment. Additionally, this position is consistent with the parties' arguments and concessions below that the first three elements of Moir's hostile work environment claim could be met.

Moir reported such conduct as ongoing harassment to SCC. Absent such notice, Cole's conduct cannot be imputed to SCC and SCC was under no obligation to take any action. Perry v. Costco Wholesale, Inc., 123 Wn. App. 783, 793, 98 P.3d 1264 (2004) (employer's obligation to take corrective action is triggered upon the employer having "actual knowledge through higher managerial or supervisory personnel of a complaint of sexual harassment").

Even assuming *arguendo* that Moir disclosed Cole's act of glaring and crotch-pointing at her to SCC, the evidence establishes that SCC took adequate corrective action to quell any additional similar conduct. The record indicates that Moir did not complain about any further contact from Cole during the pendency of SCC's investigation. Then, at the conclusion of SCC's investigation in July 2015, SCC imposed a permanent order that Cole have no contact with Moir under the threat of corrective action by SCC. We conclude that SCC's corrective action was adequate to address Cole's conduct to that point.

Lastly, Moir does not offer any argument or authority to support the notion that Cole's spring 2016 acts of wagging his head at her and offering her a book should be imputed to SCC. But, even if she had done so, the record indicates SCC responded appropriately to Cole's violations of the no contact order. Less than an hour after Moir informed SCC about being contacted by Cole, Lane arranged a meeting with her to discuss it further. After meeting with Lane, Moir appeared to be satisfied upon learning that "FINALLY a note will appear in [Cole's personnel] file" and that "[i]f he does anything else, he will be terminated. :)"

9

(Emphasis added.) Based on this record, we conclude that SCC's response to Cole's March 2016 violations of the no contact order was adequate.

### B. Delay of Investigation and Severity of Discipline

Moir also contends that "SCC's egregious delay in investigating, which ultimately in [sic] Cole's receiving no discipline, does not represent a reasonable response by SCC." We disagree. Moir's dissatisfaction with SCC's inability to formally discipline Cole "is not evidence [that SCC's] response was unreasonable." Francom v. Costco Wholesale Corp., 98 Wn. App. 845, 857, 991 P.2d 1182 (2000). Sims noted that the failure to give Cole notice limited formal disciplinary action under the "faculty collective bargaining agreement." These collective bargaining provisions are not enumerated in the record. However, the record is clear that the failure to provide the initial notice to Cole did not preclude all discipline or preclude SCC from taking action to stop the conduct.

SCC "was required only to take whatever action was reasonably likely to prevent further harassment." Id. Here, the evidence shows that SCC's actions did so. After SCC admonished Cole in October 2014, Moir was not subjected to any additional sexually graphic communications, appraising looks, or unwelcomed touches. After SCC imposed a "no contact" order in 2015, Moir reported in March 2016 a nonverbal facial movement while passing in the hall and a verbal contact about a textbook. SCC promptly reprimanded Cole for contacting Moir and Moir was not contacted by Cole again. The fact that the inappropriate conduct stopped is proof that SCC's response was reasonable and adequate as a matter of law.

### II. Attorney Fees on Appeal

10

SCC asks this court for an award of attorney fees and costs on appeal pursuant to RAP 18.1. Because SCC provides no meaningful argument or citation to authority showing that it is entitled to attorney fees, SCC fails to comply with the requirements of RAP 18.1. We decline SCC's request.

CONCLUSION

Moir demonstrated no genuine issue of material fact to support imputing her hostile work environment claim to her employer. The trial court properly dismissed her complaint on summary judgment.

Accordingly, we affirm.

Appelwick, CJ

WE CONCUR: